## THE PEOPLE *vs.* JACKSON.

The keeping of a common gaming house is indictable at common law, on account of its tendency to bring together disorderly persons, to promote immorality and to lead to breaches of the peace. *Per* BRONSON, C. J.

But an indictment only alleging that the defendant kept a common gaming house, without stating what was transacted there, would not, it seems, be sufficient. *Per* BRONSON, C. J

The keeping of a room or place for the sale of tickets in lotteries not authorized by law is not indictable.

And where an indictment charged the defendant with keeping a certain common gaming house, in which he sold and furnished tickets in lotteries unauthorized by law, to divers persons, it was held not to set forth an indictable offence.

ERROR to Albany mayor's court. The defendant was indicted in the Albany oyer and terminer, and the indictment was sent into the mayor's court. The first count charged that the defendant on the 1st of May, 1843, and on divers other days and times &c. with force and arms, at &c. unlawfully did *keep and maintain a certain room and place for the sale of tickets in lotteries* not authorized by any law of the state of New-York, situate in the city of Albany aforesaid, to the great damage and *common nuisance* of all the good people of the state, and against the peace of the people and their dignity. *Second count,* that the defendant did *keep and maintain a certain common, ill-governed and disorderly room for the sale of tickets* in certain lotteries unauthorized by law; and in said room for his own lucre and gain *did sell* to divers persons, as well men as women, certain *tickets of and in certain lotteries,* which said lotteries were not authorized by law, to the great damage and common nuisance of all the good people, &c. *Third count,* that the defendant *a certain common gaming house* there situate, for his own lucre and gain, unlawfully and unjustly *did keep and maintain;* and in the said last mentioned gaming house *certain tickets in lotteries unauthorized by law did furnish and sell* to divers persons (whose names are to the jurors aforesaid unknown) to the great damage and common nuisance of the good people,

&c. The defendant demurred to the indictment; and the court below gave judgment in his.favor. The people bring error.

*E. C. Litchfield,* (district attorney,) for the people.

*H. G. Wheaton,* for the defendant.

*By the Court,* BRONSON, Ch. J. We have not enacted the statute 33 H. 8, c. 9, § 11, against gaming houses. (*See* 1 *Hawk. P. C.* 721, *Curwood's ed.*) Still, I have no doubt that the keeping of a common gaming house is indictable at the common law. (*The King* v. *Rogier,* 1 *B. & C.* 272; *The People* v. *Sergeant,* 8 *Cowen,* 139.) It is illegal, because it draws together evil disposed persons; encourages excessive gaming, idleness, cheating and other corrupt practices; and tends to public disorder. Nothing is more likely to happen at such places than breaches of the public peace. (1 *Hawk. P. C.* 693, § 6; *Roscoe Cr. Ev.* 663, *ed of* '36; 1 *Russ. on Cr.* 299, *ed. of* '36; 3 *Chit. Cr. L.* 673, *note, ed. of* '19; *Arch.. Cr. Pl.* 600, *ed. of* '40.) But it is not so of a house or room, for the illegal sale of lottery tickets. Men do not congregate at such places. On the contrary, they go in one at a time, and the business is transacted behind screens and in corners, where there is no witness. There is enough of evil in it; but no tendency to breaches of the public peace. It is true that an unauthorized lottery is a public nuisance. (1 *R. S.* 665, § 26.) But a place for the sale of tickets is not a lottery. Keeping an office or other place for registering tickets in an unauthorized lottery is expressly forbidden; (§.34;) but there is no prohibition against keeping an office or place for the sale of tickets. I see no principle on which the first count can be supported.

The third count charges, that the defendant kept a common gaming house; but it tells what the jurors meant by a gaming house; to wit, a place where tickets in unauthorized lotteries were sold. There is no precedent for such a count. But it is said that the last part of the count may be rejected; and then the charge will be that the defendant kept a common gaming

house. There are some *dicta* in the books, to the effect that such a general charge would be enough. (*The King* v. *Rogier*, 1 *B. & C.* 272, *per Holroyd, J.* ; *Commonwealth* v. *Pray*, 13 *Pick.* 359, *per Morton, J.* And see *The King* v. *Dixon*, 10 *Mod.* 335 ; *Rex* v. *Mason*, 2 *Leach*, 548.) The precedents are the other way. They go beyond the general charge, and allege that the defendant did cause and procure divers idle and evil disposed persons to frequent the house, and play at illegal games, &c.; and sometimes, disturbances and breaches of the peace are added. (*Archb. Cr. Pl.* 600 ; 3 *Chit. Cr. L.* 673, 4.) I do not think the general charge would be enough in an indictment at the common law. But if we assume that it would, still, this count cannot be supported ; for it does not stop with the general allegation, but goes on to tell what was meant by it.

The second count charges the keeping of an ill-governed and disorderly room *for the sale of tickets.* The pleader has substituted the sale of tickets for such things as are usually done in bawdy houses. This count is worse than the others.

Judgment affirmed.