THE PEOPLE OF THE STATE OF ILLINOIS, appellants, *v.* THE CITY OF ST. LOUIS *et al.,* appellees.

| 10 | 351 |
| 21a | 71 |
| 10 | 351 |
| 159 | 391 |

*Appeal from St. Clair.*

The State of Illinois, as a political corporation, has a right to institute a suit in any of its Courts, whether it be required by its pecuniary interests, or the general public welfare demand it. If the subject of the suit be local, the suit must be commenced in the county of its locality, unless the Legislature has specially authorized it to be commenced elsewhere.

A Court of Chancery may grant preventive as well as remedial relief, and this may be done where the act threatened would be punishable under the criminal laws as a nuisance.

The Mississippi river is a navigable stream, declared to be so, and recognized as such by numerous treaties and many public laws.

The several States bordering on the Mississippi river may change its current, or even fill up some of its navigable channels, whenever they find it necessary to their own well being, taking care that they leave a free navigation to those who have a right to navigate it.

Individuals may make any erections on their own land which do not infringe upon the public easement; but they have no right to erect a nuisance in the highway. It is not for them, but the State, to judge whether the whole of a public highway is necessary for the public accommodation.

The eastern channel of the Mississippi river between Bloody Island and the main land is, in fact, and within the meaning of the law, navigable, and a part of the common highway, and cannot, therefore, be obstructed.

It is not every purpresture that amounts to a nuisance, and if it does not, when the interposition of a Court of Equity is invoked, it will take upon itself to inquire whether the interests of the State would be promoted by its interference, and if they would not, the Court would refuse its aid. But if the purpresture do amount to a nuisance, then the Court cannot inquire how the public good may be affected, but will interpose, and abate the nuisance.

BILL IN CHANCERY for an injunction, &c., in the St. Clair Circuit Court, filed by the appellants against the appellees, and heard before the Hon. Gustavus P. Koerner, at the September term, 1848.

The bill set forth, in substance, the following facts, to wit:

1. That the city of St. Louis, a public corporation situated in the State of Missouri, through her agents and Henry J. Hall, James Conran, Anthony Bennet and John Schreiber, who are also made defendants to the bill together with divers and sundry persons to the orators unknown, on the 12th day of June, 1848, and from that time up to the appli-

cation, in the county of St. Clair and State of Illinois, deposited large quantities of rock and stone in the eastern channel of the Mississippi, between Bloody Island and the eastern bank of said river.

2. That the depositing of said rock, &c., was seriously injuring and irremediably destroying the navigation of said eastern channel of said river within said county, &c , and that, if continued, would entirely destroy the navigation of said eastern channel.

3. That defendants were endeavoring to build a rocky road across the entire eastern channel of said river, in said county, &c.

4. That said river is a public highway and so declared, &c., and ever to be kept open for the use of the people, &c.

5. That said eastern channel is navigable for steam boats, flat boats and barges, and that the free and uninterrupted navigation of said river is valuable beyond all possible calculation to the orators, and that the obstruction thereof is injurious to the orators in a larger sum than can be calculated, and that the deposit of rock hereinbefore set forth is an obstruction to the free use of said channel in said county, &c., and if permitted to be continued would irremediably destroy that part of said channel, in, &c., ( as before described. )

6. That defendants were attempting by said obstruction to turn the entire channel of the Mississippi river into the western channel of said river, on the western side of Bloody Island; that the work is impracticable, and, if completed, would cause large portions of the Illinois shore in said county to fall in, and shoals and sand bars to be formed where the channel now runs, and make said channel, now safe and navigable, unsafe and dangerous, and injure the orators.

7. That the orators have the sole right to regulate roads within the limits of the State of Illinois; and the defendants were attempting to build and regulate a public road across the navigable eastern channel of the Mississippi river, infringing upon the rightful jurisdiction and sovereignty of the orators.

8. That the county of St. Clair has a right to erect a

The People *v.* City of St. Louis *et al.*

ferry, by virtue of an Act, approved 2d day of March, A. D., 1839, entitled "*An Act to authorize St. Clair county to establish a ferry across the Mississippi river,*" and that a portion of the profits of said ferry go to the State of Illinois.

9. That, by virtue of said law, St. Clair county did establish said ferry from a point in said county upon said river, about 40 yards below where said defendants were depositing said rock, &c., and that the orators have derived and are deriving large profits from the same, and that said profits will increase annually, &c., and that if said obstruction is continued as contrived by said defendants, would entirely remove the water of said river from the landing of said ferry upon the Illinois shore, and entirely destroy the value thereof, and deprive orators of large sums of money yearly; that said work is carried on, &c., by defendants, their agents, servants, workmen, boatmen and other persons, acting in concert, whose names are unknown to orators; that the city of St. Louis, also made defendant, was a public corporation without the jurisdiction of this State, and constituted by and in the State of Missouri, and was engaged in and encouraging the deposits of rock, &c., as aforesaid, by paying and promising to pay those personally engaged in said work; that said city of St. Louis, through her constituted authorities, had passed sundry ordinances from time to time, which are made a part of the bill; and that said defendants were about to commence or had commenced to build another dam across said channel, to extend from the head of Bloody Island in St. Clair county, to a point on the Illinois shore in the county of Madison, the more effectually to fill up and obstruct said eastern channel, &c., depriving the orators of the profits of said ferry and the use of said channel.

10. That the orators could only have adequate relief in a Court of Chancery; that injunction be awarded and that upon the above bill, on the 26th of June, an injunction issued as above prayed for, which writ of injunction was duly served, &c.

At the September term, the City of St. Louis appeared and filed a demurrer to the bill as follows, to wit:

1.   That complainants have not by the bill made such a case as entitles them, in a Court of Equity, to any discovery or relief from or against the City of St. Louis, touching the matters, &c.

2.   That the Circuit Court in and for the county of Sangamon, State of Illinois, and not the said St. Clair Circuit Court, had jurisdiction of the several matters contained in the said bill.

3.   That the Circuit Court in and for the county of St. Louis and State of Missouri, and not the said St. Clair Circuit Court hath jurisdiction of all the matters set forth and alleged in the said bill.

4.   That the city of St. Louis is improperly joined in the said bill as defendant with John Schreiber and others, wherefore, &c.

John Schreiber, one of the defendants, pleaded, that he is a resident of the State of Missouri, and was at the time the bill was filed, and never resided in the county of St. Clair and State of Illinois; nor was he ever found in said county of St. Clair and State of Illinois.

The other defendants, Henry J. Hall, Anthony Bennett and James Conran filed answers which set forth, in substance, the following, to wit: they denied that at or before filing said bill of complaint they had been engaged in depositing rock, &c., in the eastern channel of the Mississippi river; and admitted that the Mississippi river forms the boundary line between the States of Illinois and Missouri, and had been, and then was a public highway, open to the free use, &c.; but denied that the waters between Bloody Island and the Illinois shore, were then or had been considered the ordinary navigable waters of said river, but that the ordinary navigable portion of said river in the vicinity of Bloody Island was on the west side of said island; and denied that the filling up of the waters on the east side of said island, would destroy any channel of the said river; and alleged that the

filling up of said eastern channel would be of incalculable advantage to the people of the State of Illinois, and would improve the navigation of said river; admitted that the City of St. Louis was a public corporation, &c., and alleged that the Legislature of Missouri authorized the prosecution of said works. That the said City had passed ordinances, and that by the aforesaid authority and that of the United States, they commenced a stony dyke from Venice on the Illinois shore, running down said shore towards the head of Bloody Island, in order to produce a deflection of the water in said river. That in order to secure the said work, a cross dyke had also been commenced from the Illinois shore to Bloody Island in St. Clair county; and averred that Bloody Island and the land on the Illinois shore, for at least a half mile above and below said cross dyke, belonged to individuals, who granted to the City of St. Louis express permission to construct said cross dyke. And that the City of St. Louis, in order to construct said works upon the plan mentioned, entered into contracts with these defendants and John Schreiber co-defendant; admitted that the county of St. Clair did establish a ferry according to law, &c; but denied that the complainants have any interest in said ferry, and averred that it is the exclusive property and right of St. Clair county, and denied having attempted to build a rocky road, &c., and infringe upon the rightful sovereignty of said complainants.

Afterwards the following state of facts was agreed upon, to wit: That, at the time of filing said bill, said defendants, Hall, Conran and Bennett, were about to deposit stone in the Mississippi river, with the intention of constructing a dyke from Venice, on the Illinois shore, to the head of Bloody Island; that for the purpose of showing that said dyke was the same projected and in part constructed by the United States, for the years 1838, 1839 and 1840, the said parties might refer to any correspondence with any of the officers of the General Government or official documents; that the City of St. Louis, through the said defendants, was, at the time of filing said bill, about to continue and complete the

construction of said dyke by depositing stone in the water as above stated; that the work was to be done by said defendants under the direction of an agent of the City of St. Louis, in pursuance of ordinance, &c.; that the said dyke was and is designed to deflect the main body of the water in the Mississippi river towards the western side of Bloody Island; that it was the intention of said defendants to raise said dykes to a height of four or five feet above low water mark; that a direct line from the Illinois shore to Bloody Island is about 250 yards, and from Bloody Island to the Missouri shore about 850 yards ; that the usual and ordinary channel of the Mississippi is now, and has been, time out of mind, on the west side of Bloody Island, and regarded as the usual navigable channel of the Mississippi river; and the said dyke (in the opinion of defendants, plaintiffs not admitting) would not injure, but benefit said channel.

It was further agreed that, in times of high water and floods, steam boats, barges and other water crafts, heretofore, and up to the filing of complainant's bill, had passed up and down on the eastern side of Bloody Island; and likewise in ordinary stages of the river small water crafts, such as steam boats of light draught, flat boats and barges, had passed up and down on the east side of said Island; and at high and ordinary stages of the river, steam boats, &c., lie up or moor between Bloody Island and the Illinois shore; but in low stages of the water, said channel was not safe and was not used for purposes of navigation, but was used for the purpose of mooring vessels; that if the said dyke is made, the channel between Bloody Island and the Illinois shore would be so obstructed that steam boats or other craft would be prevented from passing up and down said channel, except in high stages of said river; that it was also expected that the making of said dyke would have the effect to cause said channel on the east side of Bloody Island to fill up with sand and other deposits to the height of said dyke; that it was also expected that the making of said dyke would have the further effect to cause an accumulation of

deposit and sand in front of the place on the Illinois shore, where the St. Clair county ferry boats land, and such deposit would, in a very short time after the completion of said dyke, be so great that the said ferry boats could not land at their usual landing place during low water; that it was also expected that it would become necessary, in a very short time after the completion of said dyke, to extend said ferry wharf, &c., out and west, say at least three hundred yards from where it now is and from where said boats now land, and it might become necessary to make said wharf or landing further down the river.

It was further agreed that Bloody Island and the land on the Illinois shore, from the northern boundary of St. Clair county to a point below, between where the ferry boats land, belonged to individuals who, before the filing of said bill, executed to the City of St. Louis an instrument in writing, &c., filed with the bill.

It was also admitted that Bloody Island and the main land from Venice down to and below the present landing of said ferry boats are within the jurisdiction of the State of Illinois.

Upon a hearing of the demurrer of the City of St. Louis and the plea of John Schreiber, the Court sustained the demurrer and plea, and dismissed the bill as to those parties; and upon a hearing upon the bill, answer of Conran, Hall and Bennett, and agreed state of facts, the Court dissolved the injunction and dismissed the bill.

*P. B. Fouke,* for the appellants.

1. The Mississippi river is a public highway. 8 U. S. Laws, page 57–83; laws of 1783, declared by treaty, 1 U. S. Laws, 140, 1895. The Mississippi is also secured as a public highway by the laws of Congress and the Constitutions of the several States bordering upon it. See Constitutions of Illinois, Louisiana, Missouri, and Mississippi; Ordinance of 1787.

2. The right of the public in a highway extends to every part of it. *Rex* v. *Russell,* 6 East, 427 ; 9 Wend. 571, 607,

610 ; Angell on Watercourses, 213, 204. Every impediment thereof becomes a public nuisance. 4 Harr. Dig. 293-8, § 6 ; *O'Fallon* v. *Daggot*, 4 Missouri, 343 ; *Mayor & Aldermen of Mobile* v. *Glover*, 9 Porter, 577 ; 11 Ohio, 138 ; 2 Supplement to U. S. Dig. 462, § 4.

3. The agreed state of facts admits the following injuries : 1. obstructions to large steamers ; 2. to small steamers ; 3. to landing on Illinois shore ; 4. to mooring of vessels 5. to Ferry company ; 6. to landing of St. Clair county ferry. It is a shipping point at the terminus of the great western mail route, and for produce of every kind.

4. Will an injunction lie in such cases ? The principle I find laid down by the authorities is, that when a thing exists, the Court may order a trial at Law ; but where it is to be prevented, Equity will interfere. Where the party can be made to answer in damages, the Court may hesitate to interfere, but when the injury is irremediable, Equity will assert her jurisdiction. 4 Barb. & Har. Dig. 321, §§ 4, 8, 9 ; *State* v. *Mayor of Mobile*, 5 Porter, 280 ; 9 Wend. 571.

5. And the Court will not refuse to interfere, merely because it is a case of first impression, if there is a wrong sufficiently established to show the necessity of a preventive remedy. 2 Story's Eq. Jur. 921-4 ; Ibid. § 959, and note.

6. We contend that the State is properly plaintiff, because the alleged wrong was an infringement of her sovereignty, and she has jurisdiction over said river as far as the same is within her borders, according to the most solemn treaties ever entered into, and the laws of the United States.

The Revised Statutes 150, § 53, authorize injunctions on behalf of the State.

The injury complained of is a public nuisance upon her property, or property equitably represented and held by her, and if permitted to be continued would injure a great navigable stream within her borders, at a point within her boundaries.

When this State was admitted into the Union as a State, she became the sovereign power over all the territory em-

braced within her boundaries for purposes not expressly reserved, and not against the Constitution of the United States. See the Constitution and boundaries of Illinois.

The obstruction complained of would destroy the St. Clair county ferry, thirty per cent. of the profits of which belong to complainants. Laws of 1838, p. 175.

The State has an equitable title in the soil over which her highways· pass, sufficiently good to enable her to maintain actions and to prevent obstructions. 2 Smith's Leading Cases, 148–9; *City of Cincinnati* v. *The Lessees of White*, 6 Peters, 431; *State* v. *Mayor of Mobile*, 5 Porter, 280 ; *Cox* v. *State*, 3 Blackf. 194; 4 Call, 441 ; 9 Porter, 601.

It is a purpresture. See definition of this term in 3 Tomlin's Law Dic. 189 ; 7 Comyn's Dig. 178 ; 2 Story Eq. Jur. 921.

A Court of Equity will interfere to prevent an infringement or encroachment upon the rights of the public, on information or bill where the wrong complained of is a purpresture. *Attorney Gen.* v. *Cleaver*, 18 Ves. 218 ; 2 Story's Eq. Jur. § 924 and note ; Mitford's Eq. Pl. 144–5 ; *Attorney Gen.* v. *Johnson*, 2 Wilson, 101–2 ; *Attorney Gen.* v. *Forbes*, 2 Mylne & Craig, 129–30; 6 Paige, 559 ; *Hunt* v. *Mayor*, 3 do. 213; *Attorney Gen.* v. *Cohoes Co.*, 6 do. 133.

Any and all persons have a right to abate nuisance in a summary way. A corporation has the right to do so. 9 Wend. 571.

If the State can delegate that power, she possesses it. And the same rule of law which authorizes a summary mode to abate, will justify and acknowledge a preventive remedy.

The Court will not refuse because it is a case of first impression. 2 Story's Eq. Jur. 921–3; Ibid, § 957, and note.

7. Was this bill filed in the proper Court? it is regarded as a local action. Angell on Watercourses, 204, 214; Rev. Stat. 93, § 2.

If the defendants are all to be regarded as non-residents, then the State has a right to commence the suit in any county. Rev. Stat. 93, § 2.

Service was had in the usual way, and according to the
Revised Statutes, 93–4, § 5.

The law giving the Circuit Court of Sangamon county
jurisdiction, contained on page 149 of the Revised Statutes,
the 51st to the 62d section inclusive, is cumulative and does
not take away the jurisdiction from the other counties. See
proviso to § 61 ; also § 63.

As to construction of Statutes, &c. See 3 Iredell's Eq.
R. 471.

8. Was the City of St. Louis properly a party?

The City demurred to the merits of the bill, not on
the ground of physical disability, and consequently ₁brings
herself into Court by so doing. *People of New Jersey*
v. *The State of New York*, 6 Peters, 523 ; 9 N. Hamp.
394.

The construction is, that nothing shall be intended to be
out of the jurisdiction of a superior Court, but that which
specially appears to be so. 2 Scam. 269 ; ib. 279.

Every presumption is to be made in favor of the jurisdic-
tion of a Court of general jurisdiction. *Wells* v. *Mason*, 4
Scam. 85.

If there had been no statute in regard to the matter, the
suit would have been properly brought.

The plea of John Schreiber shows no personal disability to
be made a party defendant to the bill, since the bill charges
his connection with the wrong or nuisance enjoined, and it
was proper to make him a defendant. Mitford's Eq. Pl.
164–5.

The only defence is that they have the authority of the
owners of the soil upon both sides of this channel, &c. 2
Supp. U. S. Dig. 462, § 4; 3 Blackf. 194; 4 Harr. Dig.
2938.

And I again wish to insist upon that salutary rule, which
permits an individual to resort to a summary mode of abating
a nuisance because of the tardiness of the law, will permit
and justify a sovereign State in asserting her rights, and ar-
rest the hand of the destroyer whilst attempting to fix upon
her borders an irremediable injury.

*J. M. Krum,* and *R. S. Blennerhassett,* for the appellees.

I.　The Court below did not err in sustaining the demurrer of the City of St. Louis, one of the defendants to the complainants' bill, and the causes of demurrer set out in the record are sufficient to sustain the decree of the Circuit Court.　Story's Eq. Pl. § 490, 544; 2 Mad. Ch. Pr. ·287; 1 Dan'l Ch. Pr. 607; Cooper's Eq. Pl. 118, 160, 163; Rev. Stat. 149, §§ 51, 61.　The City of St. Louis being (as shown on the face of the bill,) a foreign corporation cannot be sued in this State, in a case like this, the suit not having relation to any property, franchise or freehold. 16 Johns. 5; 5 Mass. 193; 16 Pick.274, 512; 5 Cranch. 61; 2 W. Black. 947; Mitf. Eq. Pl. 221, 222.

II.　The plea of John Schreiber is a *pure* plea, and goes first to the jurisdiction of the St. Clair Circuit Court over the person of the defendant pleading; and secondly to the character and right of the plaintiff to sue in said Court in this suit.　2 Dan'l Ch. Pr. 714; Story's Eq. Pl. §§ 660, 665, 694, 697; Rev. Stat. § 51, 61; Cooper's Eq. Pl. 237, 241.

III.　The Court below did not err in finding the issue made upon the answer of Hall, Conran and Bennett for said defendants.

1.　Because the evidence does not sustain the material allegations of the bill;

2.　Because the evidence does not show that said defendants either had obstructed or were about to obstruct the navigation of the Mississippi River;

3.　Because the evidence does not show that said defendants either had created or were about to create a public nuisance within the jurisdiction of the State of Illinois;

4.　Because the evidence does not show that the State of Illinois, at the time of filing said bill, owned or possessed any property, real or personal, which was or might be affected or injured by the works which said defendants were about constructing;

5.　Because the evidence does not show that the people of Illinois had any legal or equitable right or pecuniary interest, which was or might be affected by said works;

6. Because the evidence does not show that said defendants had in any way infringed upon the sovereignty of the State of Illinois;

7. Because the evidence does not show that said defendants either had created or were about to create or erect a public nuisance in any part of the navigable waters of the Mississippi River; and

8. Because the evidence does not show that the channel above the said works is in any way injured or endangered by said works.

In support of the last proposition, and of the decree of the Court below, the following legal grounds are assumed and maintained:

1. A nuisance is defined to mean some hurt, inconvenience, damage or annoyance; and a nuisance is said to be public when it annoys, hurts or incommodes citizens and the public generally;

2. The evidence does not support the allegations of the bill, which in substance alleges the works complained of, to be a public nuisance. Rev. Laws, 175, § 134;

3. The complainants' bill cannot be sustained unless the evidence shows that the defendants either had in fact created, or were about to create a public nuisance. The fears of mankind, though reasonable, will not create a nuisance. A Court can only interfere to prevent or abate nuisances, which are such at law. 2 Atk. 751; 18 Vesey, 211, 218; 19 do. 620, 622; 3 Kent, 430, 427, (note); 3 Black. 215, 219; 4 do. 167; Thatcher's Crim. R. 211; 2 U. S. Dig. 461; 17 Johns. 195; 3 Scam. 520; 4 Paige, 229; Story's Eq. Pl. §§ 41, 42, 925; 3 Dan'l Ch. Pr. 1834, 1857; 1 Humphrey, 524;

4. The evidence does not show that any rights of property, either public or private, were affected, or in danger of being injured or affected by the works in question, and unless the evidence shows some interference with, or violation of a subsisting and tangible right, a Court of Equity will not interfere. It is a contradiction of terms, to say that a public nuisance can be created or suffered without violating

some right, and the burthen rests on the party charging the existence of a public nuisance to show affirmatively what right, privilege or franchise is violated thereby. 2 Johns. Ch. R. 371; 3 do. 287; 12 Peters, 91;

5. Conceding, for the purposes of this case, that the evidence does not show the defendants guilty of creating or suffering what would be regarded as a public nuisance, still the bill cannot be sustained, because it is apparent that the complainants have an adequate and complete remedy at law. 6 Pick. 395; 7 Johns. Ch. R. 315; 5 do. 101;

.6. Sovereignty is the possession of the highest power— uncontrolable power, or supreme dominion. The power of the State of Illinois is supreme within the boundaries of the State in respect to certain subjects, and for certain purposes. It may be said, therefore, with fitness and propriety, that the State of Illinois is a sovereign State, and that she possesses sovereignty. But there are subjects, however, within the limits of the State, over which she does not possess sovereign or supreme power. For example, the public lands, forts, custom houses, light houses, and other property of the United States, navigable rivers, &c. &c. Over these the State of Illinois does not possess sovereign power, although the subjects are within her territorial limits. It may be said in few words, that the State of Illinois possesses sovereign power over all subjects within her boundaries, except as to such as the State of Illinois may have waived or abandoned control, or as to such as may be under the control of the United States, or some other power.

The sovereignty of the State of Illinois over the Mississippi River and other navigable waters, whether exclusively within the boundaries of the State or not, is a qualified sovereignty. In no sense is it supreme or exclusive. Every State in this Union has the same control as the State of Illinois over the navigable rivers within her boundaries. The works, therefore, of the defendants designed as they are proved to be to deflect the water to the west side of Bloody Island, do not infringe upon the sovereignty of the State of Illinois.

*E. Keating,* for the appellants, in conclusion.

I.   The injury complained of arose in St. Clair county and there being no express restriction of jurisdiction, the subject matter of the bill was within the jurisdiction of the Court.   Rev. Stat. 93, § 2 ; Angell on Watercourses, 159, 213 ; *Beaubien* v. *Brinckerhoff,* 2 Scam. 269, 279 ; *Wells* v. *Mason,* 4 do. 85.

II.   The State is properly complainant, because the alleged wrong was an infringement of her sovereignty, was a public nuisance upon her property, property equitably represented and held by her, and also, because if permitted to be continued, it would injure a great navigable highway which was partially within her boundaries, at a point within her boundaries, and would also destroy the St. Clair county, ferry, thirty per cent. of which belonged to complainants.

1.   The Mississippi is a public highway.   8 U. S. Laws, 57, 83 ; law of 1783, so declared by treaty ; 8 do. 140 ; do. 1895.

2.   The Mississippi is also secured as a public highway by the laws of Congress and the Constitutions of the States bordering on it.   See Constitutions of Illinois, Louisiana, Mississippi, and the Ordinance of 1787.

III.   The Mississippi is not only a public highway, but the owners upon the banks only own to low water mark.

1.   This is sustained by the following decisions.   *Bullock* v. *Wilson,* 2 Porter, 448 ; 2 Smith's Leading Cases, 148-9 ; *Cox* v. *State,* 3 Blackf. 194 ; 4 Har. Dig. 2938 ; *Howe* v. *Richards,* 4 Call, 441 ; 9 Wend. 571.

2.   These decisions are sustained by the Acts of Congress.   1 U. S. Laws, 468, § 9; ib. 491 ; ib. 140, Art. IV.

IV.   When the State of Illinois was admitted into the Union as a State, she became the sovereign power over all the territory embraced within her boundaries for all purposes not expressly reserved, and not against the Constitution of the United States, and her boundaries embraced the territory and the portion of the Mississippi, where the wrong complained of is alleged to be.

1. ` The boundaries of Illinois in the Constitution of Illinois.

2. The State has an equitable title in the soil over which her highways pass sufficiently good to enable her to maintain actions for their interruption and to prevent their obstruction. 2 Smith's Leading Cases, 148-9 ; *City of Cinn.* v. *Lessees of White*, 6 Peters, 431 ; *State* v. *Mayor of Mobile*, 5 Porter, 280; 9 do. 587 ; *Cox* v. *State*, 3 Blackf. 194 ; *Howe* v. *Richards*, 4 Call, 441 ; 3 Kent's Com. 427 ; *Pollard* v. *Hogan*, 3 Howard's ( U. S.) R. 212-230.

V. The wrong set forth in the bill is an encroachment upon a public highway, within the jurisdiction of this State, properly cognizable in Equity. 1. It is a purpresture. See definition of purpresture, 3 Tom. Law Dic. 189; 7 Comyn's Dig. 178; 2 Story's Equity, 921. 2. A Court of Equity will interfere to prevent an infringement or encroachment upon the rights of the public on information or bill, where the wrong complained of is a purpresture. *Attorney General* v. *Cleaver*, 18 Ves. 218; 2 Story's Eq. § 924 and note; Mitford's Eq. Pl. 144–5; *Attorney General* v. *Johnson*, 2 Wilson, 101-2; *Attorney General* v. *Forbes*, 2 Mylne & Craig, 129-30; *Mohawk Bridge Company* v. *Utica and Schenectady Rail Road Company*, 6 Paige, 559; *Hart* v. *Mayor of Albany*, 3 do. 213; *Attorney General* v. *Cohoes Company*, 6 do. 133. 3. Where a thing exists, a Court may order a trial at Law, but where it is to be prevented, Equity will interfere. *Bell* v. *Blount*, 4 Hawkins, 385; 2 Barb. & Har. Dig. 83, § 1; *Trustees of Watertown* v. *Cowen*, 4 Paige, 510; *State* v. *Mayor of Mobile*, 5 Por. 280; *City of Georgetown* v. *Alexandria Canal Company*, 12 Peters, 92; 4 Barb. & Har. Dig. 321, §§ 5, 8, 9; *Gardner* v. *Village of Newburg*, 2 Johns. Ch. R. 165; *Reid* v. *Gifford*, Hop. Ch. R. 416; 3 Eq. Dig. 442; 1 Fonblanque, 48–9; *North River Co.* v. *Hoffman*, 5 Johns. Ch. R. 304. 4. If there is a wrong sufficiently established to show the necessity of a preventive remedy, an injunction is proper, and the Court will not refuse to interfere merely because it is a case of first impression. 2 Story's Eq. 921-2-3; ib. § 959, and note.

VI. The right of the public in a public highway extends to every part of it, and every impediment thereof becomes a public nuisance. *Rex* v. *Morris*, 1 Barn. & Adolph. 441;

*Rex* v. *Lord Grosvenor*, 2 Starkie, 511; *Rex* v. *Trafford*, 20 Eng. Com. Law R. 498; *Rex* v. *Ward*, 31 do. 92; *Regina* v. *Randall*, 41 do. 272; *Rex* v. *Russell*, 6 East, 427; 1 Hawk. P. C. 75, §§ 11–13; U. S. Dig., title "Nuisance;" *Shaw* v. *Crawford*, 10 Johns. 256; 4 Har. Dig. 2938; *Hart* v. *Mayor of Albany*, 9 Wend. 571; 4 Missouri, 343.

VII. The City of St. Louis was properly made a defendant, the bill charging their connection with the injury complained of, and the major part of the defendants having been duly found within the State, and being properly made defendants by coming in and demurring to the merits of the bill, she is properly before the Court for a full determination of her rights in the subject matter of the suit. *Brook* v. *Burt*, 1 Beavan, 109, note; Story on Pleading, § 44, and note; Mitford's Eq. 164–5, Story's Eq. Pl. 76, note; *People of N. Jersey* v. *State of New York*, 6 Peters, 323; 3 Eq. Dig. 72, § 16; *Libby* v. *Hodgdon*, 9 N. Hamp. 354.

VIII. The statute giving jurisdiction of suits where the State was plaintiff to the counties where the defendants reside, or may be found, should not be construed to give jurisdiction in only those cases where all the defendants resided or were found within the county, but is merely cumulative, and without any such statute the complainants could have brought this suit in the Circuit Court of St. Clair county.

1. The statute is only cumulative. Rev. Stat. 151. 2. The ordinary practice was observed, and the action was local. Rev. Stat. 93, § 2; Angell on Watercourses, 204, 214. 3. The ordinary service was had. Rev. Stat. 93, § 5; ib. 94, § 12; 3 Iredell's Eq. R. 471.

IX. The plea of John Schreiber shows no personal disability to be made a party defendant to the bill, since the bill charges his connection with the wrong or nuisance enjoined and it was proper to make him a defendant. Mitford's Eq. Pl. 164–5.

The Opinion of the Court was delivered by

CATON, J.* The question of jurisdiction may be disposed

---

* Trumbull, J. having been of counsel in this case, took no part in the decision.

The People *v.* City of St. Louis *et al.*

of in few words. Independent of any statutory provision, the State as a political corporation has a right to institute a suit in any of her Courts, whether it be required by her pecuniary interests or the general public welfare demand it. If the subject of the suit be local, the suit must be commenced in the county of its locality, unless she is authorized by special statute to commence it elsewhere. The subject of this suit is local, and the bill was properly filed in St. Clair county, where the alleged nuisance was about being erected. Whatever might have been said against the right of the Court to bring the City of St. Louis before it as a party, that question is waived by the voluntary appearance and filing a demurrer to the merits of the bill. All the other parties were brought before the Court in the mode pointed out by law.

The jurisdiction of the Court over the subject matter of of the suit was also undoubted. The Court of Chancery may grant preventive as well as remedial relief, and this may be done where the act threatened would be punishable under the criminal laws as a nuisance. It was admitted that the Court may prevent or remove a private nuisance, and it is equally clear that it may do so when the nuisance affects the public generally; although it is not always bound to interfere in either case. No better case could be desired to illustrate the necessity of this jurisdiction than the one before us. If the acts here threatened would amount to a nuisance, the remedy offered by a criminal prosecution, would be entirely inadequate to the protection of the public franchise, for the works once erected, it is admitted on all hands that no human power could ever remove them, and such are the interests involved on the one hand, that the prospects of a prosecution which could only be followed by a light punishment, present no sufficient terrors to restrain the parties.

But the important question presented by this record is, whether the works in progress would amount to a nuisance. It is admitted that the object of these works is, and the effect will be, to entirely obstruct the eastern channel of the Mississippi river, flowing between the main Illinois shore and Bloody Island. The whole of this, together with the island, as well as all the contemplated works, are entirely within

this State. The principal channel of the river, with about five-eighths of the water, passes west of Bloody Island; and this channel is used for all ordinary purposes of navigation, passing up and down the river; while the eastern channel can only be navigated with a small class of steam boats, and with flat boats, keel boats and barges; although in a very high stage of water, it is safe for the very largest class of boats; and in a very low stage, it is hardly navigable at all, but is used for mooring boats. Although the Mississippi river is not what is termed by the Common Law a navigable stream, yet it is so, in fact, and has been declared to be so, and recognized as such by numerous treaties and many public laws. While its outlet and western border belonged to Spain, it was declared in the fourth section of the treaty of 1795, between the United States and that power, "that the navigation of the said (Mississippi) river in its whole breadth, from its source to the ocean, shall be free only to his subjects and the citizens of the United States, unless he shall extend the privilege to the subjects of other powers by special convention." 8 U. S. Stat. at large, 141. And by the fourth Article of the Ordinance of 1787, it is provided, "that the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory as to the citizens of the United States, and those of any other State that may be admitted into the confederacy, without any tax, import or duty therefor."

It is an important inquiry to determine what kind of jurisdiction, the several States, through and between which this river and its tributaries run, may exercise over such parts of them as are within their respective limits, without violating the rights thus secured to the citizens generally. This is certainly a delicate question, and in its solution, it is necessary to examine, as well the rights and benefits secured to the citizens of all the States, as the powers and jurisdiction of the several States over the portions of this great highway, within their several boundaries. Indeed, the determination of the one settles the other; for the sovereign power of these States over this highway, is only limited, or

The People v. City of St. Louis *et al.*

diminished by the guaranty of rights to the common citizens of the Union. But for that guaranty, the sovereign power of the States over the portions of the river within their limits, would be the same as it would be over any other of their highways. What then is this common right guarantied to all? What benefits were they to derive from it, and what were the privileges which they were to enjoy? The object to be attained was the promotion of commerce, and the rights secured are purely commercial. The States can do nothing which will substantially abridge those rights, but may do anything which will not have that effect, which they could do but for this guaranty. Without this guaranty, the States might treat any portion of this river within their limits as a highway or not, and if made a highway, their control and jurisdiction over it would be the same as over any other of their highways. This guaranty of rights to the citizens of other States, although made before the creation of any of the States through, or between which it flows, may be construed precisely as if it were a grant made subsequent to, or at the time of their formation. The Ordinance itself does not declare the Mississippi river to be a common highway and forever free to all the citizens of the Union, but the navigable waters leading into it. This common right of the free navigation of that river was considered as already existing, and the extent and nature of that right may be understood from the provisions made in relation to the tributaries, as all were undoubtedly intended to be placed on the same footing. There are two prominent restrictions upon the States to be formed ; one was that these rivers should never be closed against the citizens of other Sates, and the other that no tax, impost or duty should be exacted of them for the navigation of these highways. Where no material or substantial obstructions are created by the States, within whose limits those rivers run, the citizens of the other States cannot complain. The substance of the right secured, is, that of free transit. Suppose one State or nation guaranty or grant to the citizens or subjects of another, the right of freely traveling over its public roads, would it be denied

that such State or nation might narrow or change the location of such road, provided its free and commodious passage was not interrupted thereby? It is the substance of the right that is to be observed, and when that is enjoyed, no ground of complaint exists. The several States may, within their own jurisdictions, do whatever they please with this river, so as they do not infringe upon these rights, nor otherwise violate the rights of others. This power is necessary to the States for the proper management of their own domestic concerns, and has been habitually exercised by all ever since their first formation. They may change the current of this river, or even stop up some of its confessedly navigable channels, whenever they find it necessary to their own well being, the same as any other highway, taking care that they leave a free navigation to those who have a right to navigate it. As in the case before us, admitting this eastern channel to be unquestionably navigable, and hence a part of the highway, this State has a right to fill it up entirely and unite the island with the main land, if the main channel is still left open to free and uninterrupted navigation. If, in doing this, private property would be damaged, compensation would have to be first made for that. The exercise of such a power, at this or some other point might be indispensable for the terminus of a railroad or canal or some other public work. Without this power, the jurisdiction of the States over this portion of their territory would not be worth the name. It requires no vivid imagination to see in the future, the immense improvements that are to spring up all along both banks of this river from its source to its mouth, which will be of immense advantage not only to the States in which they are situated, and the local interests in their neighborhood, but to the general navigation of the streams, and all made too, by the exercise of this power by the States over this great public highway. To deny this, is to deny the right of improvement, as well as the power of injury. The absolute necessity of this power may be illustrated by many familiar instances; such as the improvement of the Naples flats in the Illinois river. There the river is broad, and nearly as navigable in one part as another, and

who would deny the right of the State to compress the water into a narrow compass, and thus deepen the channel.

But because the State may do this in its sovereign capacity, it does not follow that any individual, over whose land the river flows, may do the same. The State may shut up or abolish a public road running over my land, while if I obstruct it without the sanction of law, I erect a nuisance, although the road may be entirely unnecessary. These works are erected with the license and approbation of the owners of the soil over which the eastern channel flows, and the case must therefore be considered precisely as if the works were being erected by the owners themselves. We fully recognize their right to make any erections on their own land, which do not infringe upon the public easement, but they have no more right to erect a nuisance in the public highway, than as if the title to the land was in the State. It is not for individuals, but for the State to judge, whether the whole of a public highway is necessary for the public accommodation or not. Hence, it has been repeatedly held, that any erection or obstruction placed in any part of a public road or street which deprives the public of the use of any part thereof, is a nuisance.

In *Hart* v. *The Mayor of Albany*, 9 Wend. 584, Mr. Justice Sutherland says: "The public are entitled to the use and enjoyment of the whole of a highway, and no individual can appropriate a portion of it to his own exclusive use, and shield himself from responsibility to the public, by saying that enough is still left for the accommodation of others." This law is administered in its fullest extent in 6 East, 427, and seems to be the generally admitted doctrine, with some few exceptions, as where materials are temporarily placed in the street to be used in erecting a building, leaving sufficient room for the passage of the public on the other side. And the law seems to be quite as tenacious of the rights of the public in navigable rivers and harbors. In *The King* v. *Ward*, 31 Eng. Com. Law R. 92, the subject was carefully examined, and the previous cases reviewed, and it was held, that although a public nuisance by an erection in a harbor was counterbalanced by the public bene

arising from the act complained of, yet it constituted no defence to an indictment for the nuisance. And subsequently, in *The Queen* v. *Randall,* 41 Eng. Com. Law R. 272, where the defendant had erected a wharf between high and low water marks on a navigable river, the effect of which was to deepen the centre of the river, and improve the general navigation, the Court "left it to the jury to say whether the wharf itself occasioned any hindrance or impediment whatever to the navigation of the river by any description of vessels or boats," and told them that they were not to take into their consideration the circumstance that a benefit had resulted to the general navigation of the river, by the mid-channel of the river being kept clear, as proved by the defendant's witnesses." Although this last case, considered by itself, may be thought to go too far, it seems to be the well settled rule in prosecution for nuisances, that the defendant cannot set off equivalent or even greater benefits resulting to the public, for the erection of a real and substantial obstruction in a public road or river. In other words, a private citizen may not take the public welfare into his own hands, and justify himself for such a violation of some of its rights, under a plea of a general benefit. The erections proposed are unquestionably of such a character as to amount to a nuisance, if the eastern channel be a part of the public highway, for they would destroy it altogether, and the Court has not the discretion to excuse this, even on account of a greater benefit which might accrue to the public. We must, then, address ourselves to the inquiry whether this channel is navigable, for by this alone can we determine whether the public have an easement there.

The facts agreed upon show, that for all crafts which usually navigate this river, except steam boats, and even for a small class of these, this channel is navigable at an ordinary stage of water. Not many years since, all the commerce of that river was carried on in boats which might navigate this channel as well as the other, and such is the case now to a very considerable extent. This channel affords much better navigation than the best water in many places in the Illinois and Ohio rivers, and probably many

other of the tributaries of the Mississippi, which are confessedly public highways. It would be absurd to hold that no part of the river is navigable except where the largest class of boats can pass. A stream may be navigable for one class of boats, and not for another. Should we hold that this part of the river is not navigable, because all classes of boats cannot pass there, then by the same rule should we have to determine that those parts of the river, where the water is so strong that they can only be navigated by steam boats, are not navigable. One is only capable of being navigated by one class of boats, and the other, by another. The only feasible and practicable rule is, to hold all parts of the river navigable which may be navigated by any class of vessels habitually in use on the river.

If this Illinois channel is not a part of the public highway, then the public have no right to navigate it, and consequently whoever goes there is a trespasser upon the owners of the soil. Such a result would hardly be insisted upon; nor do I imagine that it would be denied that the defendants would be responsible for any damage which a boat might sustain by running upon the works complained of, and yet, such would not be the case, if the defendants had a legal right to erect them. There is no middle ground on this subject. This eastern channel is either a part of the public highway, or it is not. If it is, then these erections infringe upon the public franchise, and are a nuisance ; and if it is not, then the public have no easement there, and cannot be justified in encroaching upon the exclusive property of the proprietors. Either the public easement must be confined to the main channel of the river, or it extends over every part of it which is capable of being navigated. The latter, we have seen, must be the rule. Each one who navigates the river, has the right to choose the channel which suits him, without question from any individual, subject, to be sure, to certain statutory regulations.

We cannot entertain a doubt that the eastern channel of the Mississippi river between Bloody Island and the main land, is in fact, and within the meaning of the law, navigable, and a part of the common highway. We have sought in vain

for satisfactory authority, vesting in the Court a discretion to continue or dissolve the injunction, as it might deem most conducive to the public good. Had we that discretion we should not hesitate to affirm this decree ; for if we were permitted to form an opinion, we could not doubt, judging from the facts as agreed upon in this case, that the best interests of the public, as a whole, would be thereby subserved. But that opinion, as the case stands, could only be expressed as individuals, and others might judge differently. The discretion involved is vested in another branch of the government. We are not at liberty to look at these general results in determining whether these works would amount to a nuisance. The Executive or Attorney General may very properly have considered it an imperative duty, to protect the rights of the State against encroachment, leaving it to the Legislature where the question properly belongs, to say whether permission should be given to proceed with these works.

It is not every purpresture that amounts to a nuisance, and if it does not, when the interposition of a Court of Equity is invoked, it will take upon itself to inquire whether, all things considered, the interests of the State would be promoted by its interference, and if they would not, the Court will refuse its aid. But if the purpresture amounts to a nuisance, then the Court cannot inquire how the public good may be affected, but will interpose and abate or restrain the nuisance, (2 Story's Eq. Jur. § 922,) for the Court cannot sanction a public nuisance. It must not, however, be understood that a Court of Equity will, in all cases even of public nuisances, interpose its extraordinary powers, for if the ordinary Courts of Law are equal to the emergency, redress must there be sought. But where, as in this case, the nuisance could never be abated, and the public rights could never afterwards be enjoyed, the Court may not evade its manifest duty as pointed out by the law, but must effectually and in earnest interpose its restraining power. It is the business of another department of the government to determine whether the welfare of the State, and the interests of the public can permit these works to progress. While we might be of opinion that it would eminently promote the public

welfare to fill up this eastern channel, and permanently unite Bloody Island with the main land, it is possible that the Legislature might think that it would be better for the interests of the State, to let the water work its way, and accomplish what is anticipated in the report of one of the engineers, and change the main channel of the river to the east of the island. If such a result can be prevented by the exercise of any legitimate power by the owners of the banks, now being washed away, as by riveting them, we think the State could not complain, but propriety and self-interest, as well as public duty should have dictated an application to the proper authorities, before any attempt was made to fill up and entirely destroy a navigable channel of the river, situated entirely within the State.

It has not been our purpose to go beyond the case before us, and the questions growing out of, and indispensably connected with it, in our discussion of the rights of the States, within whose jurisdiction the Mississippi and its navigable tributaries are, and of the rights of individuals over whose lands they flow; for it must be apparent to every reflecting observer, that many important questions must arise, affecting as well the rights and interests of communities and States, as of individuals, from the effect produced by the ever restless action of this mighty torrent, which is constantly changing its bed, and in general seeking a shorter way to the ocean. In the settlement of these questions the greatest consideration will be required. It cannot, however, be denied that the State, as such, has a right to insist that one of the navigable channels of this river, lying entirely within its own borders, and which is a part of the public highway, shall not be destroyed without her consent. The Legislature is the proper department to judge what the interests of the State require, or may permit, and it is there, and not to the Courts, that appeal must be made, for the sanction of, or permission to arrest these works.

The decree of the Circuit Court must be reversed with costs, and a decree entered here making the injunction perpetual.

*Decree reversed.*