THE STATE OF TEXAS v. BEN M. PATTERSON ET AL.

Delivered October 7, 1896.

1. **Equity—Injunction—Public Nuisance—Gaming House.**
A court of equity has no jurisdiction, in a civil action brought by the State through its proper officer, to issue an injunction restraining the defendants from using certain premises for the purpose of carrying on a public gaming house, on the ground that it is a public nuisance and injurious to the moral welfare of the community, no injury to the civil or property rights of any citizen being shown.

2. **Same—No Injunction Against Crime.**
Equity will not undertake to restrain the commission of an act constituting a crime merely because it is criminal in character.

APPEAL from El Paso. Tried below before Hon. C. N. BUCKLER.

*W. C. McGowan,* District Attorney, and *Burges & Burges,* for appellant.—1. Courts of equity have jurisdiction to issue writs of injunction to abate public nuisances. State v. Goodnight, 70 Texas, 682;

City of Belton v. Central Hotel Co., 33 S. W. Rep., 297; Marsan v. French, 61 Texas, 173; Mugler v. Kansas, 123 U. S., 623, 672 [Book 31, p. 214, Lawyer's ed.]; United States v. Debs, 64 Fed. Rep. 724, 740; City of Georgetown v. Alexandria Canal Co., 12 Peters, 91, 98; Coosaw Mining Co. v. State, 144 U. S., 550 (Lawyers's ed., Book 36, pp. 537, 543); In re Debs, 158 U. S., 564, 587; The State of Kansas v. Crawford, 28 Kansas, 518; Littleton v. Fritz, 22 N. W. Rep., 641; People v. City of St. Louis, 10 Ill., 351, 367; Hamilton v. Whiteridge, 11 Md., 128, 69 Am. Dec., 184; 2 Story's Eq. Jur., secs. 921, 923, 924; 2 Daniel's Chan. Plead. and Prac., 6 Am. Ed., 1635; 3 Pom. Eq. Jur., sec. 1349; 2 Beach on Mod. Eq. Jur., secs. 742, 743; Snell's Principles of Eq., 495; 2 Eden on Inj., 259; 2 Beach on Inj., sec. 1080; 1 Spelling on Ext. Relief, 376; Attorney General v. Forbes, 2 Mylne & Craig, 123, 133.

2. An injunction will not be denied against the maintenance of a public nuisance because the acts which constitute the nuisance are criminal. State v. Goodnight, 70 Texas, 682, 686; Marsan v. French, 61 Texas, 173; Columbian Athletic Club v. State, 28 Law Rep. Ann., 727, 40 N. E. Rep., 914; State v. Crawford, 28 Kan. 518, (42 Am. Rep., 182); Crawford v. Tyrrel; 28 N. E. Rep., 514; In re Debs, 158 U. S., 564, 593; United States v. Debs, 64 Fed. Rep., 724, 745, 753; Attorney General v. Woods, 108 Mass., 436, 440; Mugler v. Kansas, 123 U. S., 672 (Book 31. p. 214, Law. ed.); Littleton v. Fritz, 22 N. W. Rep., 641; Carleton v. Rugg, 22 N. E. Rep., 56, 5 Law. Rep. Ann., 193; People v. City of St. Louis, 10 Ill., 351, 367; Attorney General v. Railroad Co., 3 N. J. Eq., 136; Minke v. Hopeman, 87 Ill., 450; State v. Sanders, 18 Law. Rep. Ann., 646 (25 Atl. Rep., 588); 2 Story Eq. Jur., sec. 923; 1 High on Injunction, sec. 745; 2 Daniel Chan. Plead. and Prac., 1636.

*W. B. Brack* and *W. M. Coldwell*, for appellees.—1. Courts of equity have no jurisdiction over criminal acts or immoral practices unless they injuriously affect some property or civil right. In re Debs, 158 U. S., 593; In re Sawyer, 124 U. S., 200; Attorney General v. Insurance Co., 2 Johnson Chan., 370; Cope v. Fair Association, 99 Ill., 492; Sheridan v. Colvin, 78 Ill., 247; Gause v. Perkins, 69 Am. Dec., 729; Kerr on Injunctions, secs. 1, 2; 1 High on Injunctions, sec. 20; Spelling's Ext. Relief, sec. 24; Story's Eq. Jur., sec. 937; Fetter on Equity, 8; Works' Courts and Jurisdiction, sec. 79, p. 614.

2. The rule that courts of equity have no jurisdiction over criminal or immoral acts, merely as such, applies, when no property or civil rights are involved, in cases that would be indictable, and therefore public nuisances at common law. State v. Uhrig, 14 Mo. App., 413; State v. Schweickardt, 19 S. W. Rep., 47; Attorney General v. Sheffield Gas Co., 19 Eng. Law & Eq. Rep., 644; Carlisle v. Cooper, 6 N. J. Eq., 579; Railroad Co. v. Prudden, 5 N. J. Eq., 536; Attorney General v. Railroad Co., 12 N. J. Eq., 26; People v. Chicago Association,

28 Chicago Legal News, 1; 2 Eden on Injunctions (Waterman's ed.), 260, 264; Beach on Injunctions, sec. 1044; In re Debs, 158 U. S., 593; Kerr on Injunctions, chap. 18, secs. 2, 3; High on Injunctions, sec. 739; Fetter on Equity, 301; Beach on Injunctions, sec: 1042.

NEILL, ASSOCIATE JUSTICE.—The State of Texas, through the District Attorney of the Thirty-fourth Judicial District, procured the issuance of a writ of injunction, which, upon hearing, was dissolved, upon the ground that the bill therefor disclosed no such equities as entitled her to a perpetuation of the injunction.

The third count of the bill, upon which the State now relies, is in substance as follows:

On May 1, 1895, the defendant, J. J. Taylor, had the management and control of certain premises in the city of El Paso, Texas, known as the Gem Building; that about said date he leased and rented, and has ever since leased and rented and now leases and rents said premises to one Ben M. Patterson and one Sam Burris, who, ever since May 1, 1895, have rented and do now rent said premises and hold them under the said Taylor.

That on May 1, 1895, the defendant Ben M. Patterson, and the defendant Sam Burris, acting together for themselves, personally and by and through their agents, employes and servants, operated a public and common gambling house at and in the premises so rented by said Patterson and Burris; that ever since said first day of May and on each and every day since then, except on Sundays, the said Ben M. Patterson and Sam Burris, personally and through and by their agents, employes and servants, and more especially the said defendants John Brennan, Dan Dougherty, Jim Beverly, Phil Baker, Frank Gray, Curly Bill, Jim Brewster, Dave Pegg, Phil Romin, Dad Russ, Grisly Jim, Chas. Baker, A. C. Culver, Geo. Gregory, Will Fry, Riley Hague, Bob Nix and Ed Vecque have conducted, kept and maintained at said place a public and common gaming house, at which the games of faro, roulette, craps and other games prohibited by law are played and dealt, and at which banks and tables prohibited by law are kept and exhibited for the purpose of gaming, and to which persons are permitted to resort for the purpose of gambling, and to which persons do actually resort for such purpose.

That said house is so conducted as a public gambling house, and a house to which persons resort for the purpose of gambling with the knowledge and consent of the defendant J. J. Taylor; that the place is frequented by a large number of vagrants, men who have no visible means of support and who make no effort to obtain a livelihood by honest employment, professional gamblers and other idle and vicious fellows, who are permitted to hang around said place, inciting to and promoting idleness, thriftlessness, vice and corrupt practices.

That Ben Patterson and Sam Burris personally, and their agents, employes and servants, have permitted, kept and maintained this place as a common and a public gambling house, and one to which they per-

mit persons to resort for the purpose of gambling, and to which persons do actually resort for such purpose in open and willful disregard and violation of the laws of the State of Texas, and in contempt and disregard of and injury to the morals, welfare and decency of the community.

That the maintenance of said gaming house is in violation of the laws of the State of Texas, and the rights and privileges of the citizens of El Paso, where it is situated; that it greatly inconveniences, annoys and injures plaintiff and the people of the city of El Paso; that it is a common public nuisance, and, unless it is abated by injunction, the plaintiff will suffer irreparable injury, as it has no adequate remedy at law.

The bill closes with a prayer for a temporary writ of injunction restraining J. J. Taylor from renting said house or any part of it to Ben M. Patterson and Sam Burris, either of them or to any one else as a place for playing, keeping, dealing or exhibiting any game prohibited by law, and from permitting any person or persons to deal, play, keep or exhibit for the purpose of gaming at or about said premises any of the games prohibited by law; and to restrain Ben M. Patterson and Sam Burris, and each and every one of the above named defendants from keeping, conducting or maintaining said gaming house at or about said premises and from permitting persons from playing, dealing, keeping or exhibiting for the purpose of gaining, any table, bunk or gambling device of any description whatsoever, for themselves or for any other person at or about said Gem Building or in any part of said premises.

If, as urged by counsel for appellees and held by the trial judge, there are no equities in this bill entitling the appellant to the relief prayed for, it will not be necessary for us to enquire whether the District Attorney was authorized, in the name of the State, to institute this proceeding or verify the matters stated in the bill by his own affidavit; for, in that event, such inquiries would be of no importance. We will therefore consider first the merits of appellant's bill of injunction. Before entering upon this consideration we will remark that when a State appears before a judicial tribunal, though it may be a creature of her sovereign authority, she appears as a suitor, and not in her sovereign capacity, and, as any other litigant, can only invoke such powers and jurisdiction as she has by her constitution and laws conferred upon the court before whom she has brought her action. For courts to recognize her in any other attitude, or draw a distinction in her favor against the humblest individual who appears before them, would be to stultify themselves, and subject their judges to the condemnation of the laws of the State in whose interest they sought to violate them.

It is well established that a common gaming house is at common law a public nuisance and the keeper thereof punishable criminally; for the reason that persons attracted to it, especially youths, are there lured to vice (2 Bishop on Crim. Law, sec. 1135); it draws together evil disposed

persons; encourages idleness, cheating and other corrupt practices, and tends to public disorder. Wood's Law of Nuisances, 2 ed., sec. 45; People v. Jackson, 3 Denio, 101; 2 Cooley's Blackstone, 3 ed., 176; Commonwealth v. Stahl, 89 Mass., 304; Hill v. Penson, 63 N. W. Rep., 835. And that courts of equity have jurisdiction to abate public nuisances is equally as well established. State v. Goodnight, 70 Texas, 682; City of Belton v. Central Hotel Co., 33 S. W. Rep., 297; Mulger v. Kansas, 123 U. S., 672; United States v. Debs, 64 Fed. Rep., 740; In re Debs, 158 U. S., 587; City of Georgetown v. Alexandria Canal Co., 12 Pet., 98; Coosaw Mining Co. v. South Carolina, 144 U. S., 550; State v. Crawford, 28 Kan., 518; Littleton v. Fritz, 22 N. W. Rep. (Ia.), 641; People v. City of St. Louis, 10 Ill., 351; 2 Story's Eq. Jur., secs. 921, 923, 924; 3 Pom. Eq. Jur., sec. 349; 2 Beach on Modern Eq. Jur., secs. 742, 743; 2 Beach on Inj., sec. 1080.

But it does not necessarily follow from the facts that a common gaming house is a public nuisance, and that courts of equity have jurisdiction, by injunction, to abate a nuisance, that such jurisdiction will be exercised. A court of equity may have jurisdiction of a class of cases, but may not entertain it unless the facts in the particular case wherein it is invoked require its exercise. Before such jurisdiction will be exercised, its necessity must appear from the facts and circumstances of the particular case. Though a court of equity has the power to interfere in all cases of nuisances, yet circumstances may exist in one case and which do not exist in another, to induce a court to interfere, or refuse its interference, by injunction. Courts will not in all cases interfere by way of injunction to restrain the continuance of an illegal trade, the abatement of a nuisance or the prosecution of a dangerous employment, but its power to do so in such cases belongs to the general powers possessed by courts of equity to prevent irreparable mischief and obviate damages for which no adequate remedy exists at law. Story's Eq. Jur., secs. 921, 924; Carlisle v. Cooper, 21 N. J. Eq., 579; 2 Waterman's Eden on Inj. (3 ed.), 259; Attorney-General v. Bound Brook Ry. Co., 27 N. J. Eq., 26.

It is only when property or civil rights are involved and irreparable injury to such rights is threatened or is about to be committed for which no adequate remedy exists at law, that courts of equity will interfere by injunction for the purpose of protecting such rights. The injury threatened to such rights may, if committed, constitute a crime and subject its perpetrator to punishment under the criminal law, yet as his punishment would furnish him whose property or civil rights have been irreparably injured by the acts constituting the offense, no compensation for such injury, courts of equity will interfere to prevent such an injury, notwithstanding the commission would constitute a criminal offense— not because it would be a crime, but because the injury to such rights would be irreparable. It cannot be said that such interference by a court of equity is an invasion of the domain of the criminal law, for no crime has been committed where equity interposes its arm for the pro-

tection of property or civil rights. In extending such protection it may prevent a crime, but as no one has a right to commit crime, no one should be heard to complain that he is restrained from its commission, when such restraint has been exercised in the jurisdiction of a court for the purpose of preventing him from irreparably injuring another in his property or civil rights. But courts of equity never interfere for the purpose of restraining acts constituting crime because they are criminal, for they have nothing to do with crime as such. Their interposition is solely for the protection of property or civil rights, and the only distinction between a private and a public nuisance being that the one is an injury to such rights as an individual and the other to the rights of the public at large, "the same principle must guide the interference of the court in both cases, and that principle is this—whether the extent of the damage and injury be such as the law will not afford an adequate and sufficient remedy." Attorney-General v. Sheffield Gas Co., 19 Eng Law & Eq. Rep., 644.

Therefore when a State, through her proper officer, seeks the jurisdiction of a court of equity to abate a public nuisance, she must show that such nuisance is an injury to the property or civil rights of the public at large which it is her duty, as the agent of the public, to prevent. All the State shows by her bill in this case is the offense of keeping a common gaming house and the corrupting and vicious influences attending such a nuisance. It is not shown that any property or civil rights of the public which it is her duty to protect are invaded, or that any irreparable injury will be done any such rights by the maintenance of such nuisance. The case presented is a criminal one pure and simple, in which the criminal law furnishes the only remedy that courts are required to enforce. That the law against this offense is not enforced and observed is no ground for the interposition of a court of equity, for, as has been observed, such a court has no jurisdiction to restrain the commission of crime, nor enforce moral obligations or the performance of moral duties as such, nor can it rightfully interfere with the performance of an illegal act merely because it is illegal, in the absence of an injury to property or civil rights. High on Inj. (3 ed.), sec. 20; Morawetz on Cor., sec. 1041; In re Debs, 158 U. S., 564; Cope v. Fair Ass'n, 99 Ill., 489, People ex Rel. v. Chicago Fair Grounds Ass'n, 28 Chicago Legal News, p. 1.

Courts can only administer the law as it is, and believing, as we do, that the matters alleged in appellant's bill show no equities entitling the State to a perpetuation of the injunction, it is our duty to affirm the judgment of the District Court, which is accordingly done.

*Affirmed.*