[Civil No. 3360.   Filed February 19, 1934.]

[29 Pac. (2d) 718.]

THE STATE OF ARIZONA ex·Rel. ARTHUR T. LA PRADE, Attorney General, Appellant, v. A. T. SMITH, Appellee.

Mr. Arthur T. La Prade, Attorney General, Mr. J. R. McDougall, Assistant Attorney General, and James Forest, Special Counsel, for Appellant.

Mr. Thomas J. Croaff, for Appellee.

ROSS, C. J.—This is a complaint by the state, on the relation of the Attorney General, for an injunction against A. T. Smith to enjoin and restrain him from practicing medicine and surgery without first having obtained a license to do so. The trial court was of the opinion that the facts stated in the complaint were not sufficient to authorize the interposition of equity and for that reason sustained defendant's demurrer and entered judgment of dismissal. The state has appealed and assigns the court's ruling as error.

It is alleged in the complaint that defendant, Smith, is now, and has been since June, 1928, engaged in the practice of medicine and surgery for compensation

in Yuma county; that during all that time he has daily, and often many times daily, prescribed and administered medicine and performed operations for the cure of ills and sickness of the people of the state of Arizona, maintaining an office at his residence in Yuma, Yuma county, for that purpose; that he has failed, refused, and neglected to submit himself to the board of medical examiners of the state and to demonstrate to said board his moral and professional fitness and ability to practice medicine and surgery, or to submit himself to the tests of an examination as provided by law; that he has during all of said time represented himself to be qualified to prescribe medicine and to perform surgical operations; that he is unskillful and uninformed in the practice of medicine and surgery and does not possess the moral and professional qualifications prescribed therefor; that, by reason thereof and his continuous and persistent practice, he has become a public nuisance, detrimental to the public welfare and dangerous to the public health, and contrary to and against the public policy of the state; that the constituted authorities are powerless to deal with the defendant in the criminal courts; that he has been twice tried in the criminal courts for practicing medicine and surgery without a license or certificate authorizing him to practice and acquitted; that he has publicly stated he would disregard any criminal prosecutions filed against him and was certain of acquittal; that criminal prosecutions are inadequate, even if a conviction could be had, because of the smallness of the fine that may be imposed; that, because he is uninformed and unskillful and without moral character and professional ability, he is endangering the health of the public, defeating the public policy, and is therefore a public and continuing nuisance, and, if not restrained, his practices will result in irreparable injury to the health of the public.

The demurrer questions the jurisdiction of the court, the capacity of the Attorney General to prosecute the suit, and the sufficiency of the facts to make out a case for injunction. The facts pleaded are admitted to be true by the demurrer, and they show conclusively that the defendant is violating the provisions of the statute requiring every physician and surgeon desiring to practice his profession in this state to first obtain a certificate from the state board of medical examiners authorizing him to do so. Sections 2555 and 2556, Rev. Code 1928. And under section 2560 he is guilty of a misdemeanor.

The matter of the regulation of the practice of medicine and surgery by the state is one of great public interest. It is regulatory and has for its purpose the protection of the public health—something that affects all people and in which they are all interested. The enforcement of such regulatory provisions, for the obvious reason that they concern the whole people, is especially committed to governmental agencies, and the Attorney General as the legal adviser of the state we think may very properly institute and prosecute a suit against those who fail or refuse to comply with such regulations.

"On the theory that equity will afford protection by enjoining crime when rights and interests are injuriously affected thereby, there is support for the rule that the state may restrain a criminal act when its interests or the interests of those entitled to its protection are thus affected. . . . Also, in case of public nuisances, an exception to the general rule seems to be well recognized, it being held that though such a nuisance is indictable, yet a court of equity may, at the instance of the properly constituted public authority, issue an injunction, as giving a more effectual and complete relief than can be afforded in a court of law." 14 R. C. L. 379, § 80.

The difficult question, and the one upon which the courts seem to be seriously divided, is whether the

court can or should employ its equity powers to prevent a person from committing a crime for which the legislature has prescribed a punishment and thereby deprive the defendant of his constitutional right to a trial by jury. The general rule is that the courts will not enjoin one from committing a crime. *Bisbee* v. *Arizona Ins. Agency,* 14 Ariz. 313, 127 Pac. 722. It has been thought that, the legislature having denounced certain things or conduct as criminal and fixed the punishment therefor, the proper tribunal for the trial of a violation thereof is the criminal court under regular criminal procedure. Injunctive relief is not intended as a substitute for nor as an aid to the criminal process. Fundamentally it is used to prevent the invasion, injury, or destruction of property or property rights. In affording relief in such cases it may incidentally enjoin the commission of a crime, but, if so, this is aside from its purpose and is no objection or hindrance to its use.

But there are some exceptions to this rule. It is generally held that an injunction will be granted to restrain acts amounting to a public nuisance if they affect the civil or property rights or privileges of the public or the public health, whether such acts be denounced as crimes or not. 20 R. C. L. 475, § 89; 32 C. J. 279, § 442. The state bases its right to an injunction on the allegation that the acts of the defendant, because of his lack of training and education, are a public nuisance affecting the public health, and the further fact that juries refuse to convict, and the smallness of the fine that may be imposed if a conviction should be had. That such is the situation is admitted by the demurrer, and it only remains to determine if injunctive relief under the circumstances is authorized. It is said:

"As a public nuisance concerns the public generally, it is the duty of the government to take measures to abate or enjoin it. Hence it follows that the gov-

ernment can obtain an injunction to restrain a public nuisance, without showing any property right in itself. The duty of protecting the property rights of all its citizens is sufficient to warrant issuing the injunction. Therefore, wherever a public nuisance is shown equity must enjoin it at the suit of the government.'' 5 Pom. Eq. Jur., 3d ed., 796, § 479. See, also, 2 Story's Eq. Jur., 14th ed., § 1250; *State* v. *Shain,* 297 Mo. 369, 248 S. W. 591.

Our legislature has provided that ''anything which is injurious to health . . . is a public nuisance.'' Section 4693, Rev. Code 1928.

One of the principal functions of government is the protection of the health of the citizen, and to that end the legislature, under the police power, may adopt any reasonable rules and regulations to prevent the spread of communicable diseases and for the cure or alleviation of the sick and injured. It is by reason of its solicitude for the public health and welfare that it has passed the law requiring a certain standard of learning and training of those who undertake to preserve or repair that most delicate mechanism—the human body. It is obvious that one who knows little or nothing of the human body and its reactions is unable intelligently and wisely to diagnosticate or prognosticate human ills, or to adopt sanitary means to prevent their spread or to effect their cure.

If in fact the defendant is unskillful and uninformed, as alleged, and notwithstanding is daily treating people for their ills, it is not only probable but very likely that he is injuring the health of those he treats rather than helping them. In other words, if the allegations concerning his unpreparedness for the practice of medicine are true, the reasonable deduction therefrom is that his acts are injurious to health and also a menace to life.

In *State* v. *Howard,* 214 Iowa 60, 241 N. W. 682, 684, after quoting section 12395 of the 1927 Code

reading as follows: "Whatever is injurious to health . . . is a nuisance"—the court said, among other things:

"It is obviously injurious to the public health to have men unskilled in medicine and surgery practice upon the human system. Death, insanity, great bodily injury, or the spread of epidemics may result from the care of a patient by a physician who is unskilled. . . .

"Consequently, under the rule adopted by this court, as expressed in the Fray case ([214 Iowa 53] 241 N. W. 663 [81 A. L. R. 286]), *supra,* and the public policy declared by the legislature through the acts in question, the practice of medicine without a license is injurious to the health of all the people, and therefore, under the general statute defining nuisances, constitutes and is a nuisance; when the public health is under the care of unskilled doctors, there is constant danger."

In some of the states the legislation regulating the practice of medicine and surgery and requiring the procurement of a license to practice has expressly given the courts jurisdiction to enjoin those persons practicing without licenses. *State of Iowa* v. *Fray,* 214 Iowa 53, 241 N. W. 663, 81 A. L. R. 286; *State* v. *Howard, supra; Board of Medical Examiners* v. *Blair,* 57 Utah 516, 196 Pac. 221. Such authority has generally been upheld (14 R. C. L. 380, § 81), and, if our legislature had passed such enabling act, it would have removed any doubt of the propriety or legality of this proceeding. Since our legislature has failed to empower the courts to restrain a violation of the Medical Act by one practicing medicine without a license, we are not aided by these decisions.

Other courts that have been called upon to decide whether injunctive relief without legislative authority should be granted to enjoin and restrain persons from practicing medicine without the license provided by law have refused to exercise their equity powers to

that end upon the theory that the proper and exclusive remedy was by criminal prosecution wherein the accused could have his guilt or innocence determined in the criminal courts before a jury, holding this remedy to be adequate. *People* v. *Universal Chiropractors' Assn.*, 302 Ill. 228, 134 N. E. 4; *Redmond* v. *State*, 152 Miss. 54, 118 So. 360; *State* v. *Maltby*, 108 Neb. 578, 188 N. W. 175; *Dean* v. *State*, 151 Ga. 371, 106 S. E. 792, 40 A. L. R. 1132.

In the Dean case, *supra*, the petition for the injunction alleged that the defendant, who was without a license, lacked the necessary skill and training to combat the spread and growth of communicable diseases, and was maintaining a public nuisance in the practice of his profession, to the injury of his patients and to the injury of the good morals and the health of the public at large. This was denied by the defendant, and the court without making any findings thereon enjoined the defendant from practicing medicine. The appellate court reversed the judgment suggesting that there was no finding that the acts of the defendant constituted a public nuisance, or that he lacked in training or skill, and held that equity, at the instance of the state, would not enjoin a person from practicing the profession of medicine simply because such person has failed to take the prescribed examination and to obtain a license from the state board of medical examiners authorizing him to do so. The court further stated, in substance, that it had jurisdiction and would in a proper case, at the instance of the state, restrain an existing or threatened public nuisance, though the offender be amenable to the criminal laws. We are in accord with the views of this court.

The situation presented by the complaint we think is one calling for the equitable remedy of injunction. We do not want to be understood as going as far as does the court in *Kentucky State Board of Dental*

*Examiners* v. *Payne,* 213 Ky. 382, 281 S. W. 188, or in *State* v. *Anderson,* 6 Tenn. Civ. App. 1. These courts, as we understand the decisions, restrained the defendants, who were without licenses, from practicing medicine without any showing that they were untrained and uneducated in medicine or that their practice was a nuisance. In other words, they practically held the practice of medicine without a license in violation of law is *per se* a public nuisance.

The practice of medicine and surgery is not *per se* a nuisance. A license does not add to one's qualifications. It only shows that the holder thereof has complied with the law. His skill and ability as a practitioner would be the same before as after he secured the license. Of course one having a license from the proper authorities would be presumed to be qualified to practice, and, in a criminal prosecution for violating the law requiring a license before practicing, the absence of such a license would give rise to an unrebuttable presumption of disqualification. But in a proceeding of this kind, based upon acts alleged to be injurious to health by reason of unskillfulness, ignorance and incompetency, it is incumbent upon the state to make out its case.

It appearing from the allegations of the complaint that the acts of defendant are injurious to health and a public nuisance, and these allegations not being denied but admitted, we think the court erred in sustaining the demurrer. The judgment is accordingly reversed and the cause remanded, with directions that a permanent injunction issue restraining and prohibiting the defendant from the further practice of medicine and surgery without a certificate of the medical board as provided by law.

LOCKWOOD and McALISTER, JJ., concur.