[Civil No. 4349. Filed June 16, 1941.]

[114 Pac. (2d) 236.]

J. F. ENGLE, EDWARD ROSENGREN, W. O. CREAMER and JAMES AARON, Appellants, v. DONALD C. SCOTT, as City Manager of the City of Phoenix, and LOU HOLTZENDORFF, as Chief of Police of the City of Phoenix, a Municipal Corporation, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant Engle.

Messrs. Lewkowitz & Wein, for Appellants Rosengren, Creamer and Aaron.

Mr. Hess Seaman, City Attorney, and Mr. William C. Fields, Assistant City Attorney, for Appellees.

LOCKWOOD, C. J.—Roy R. Hislop, as city manager, and E. C. Moore, as chief of police of the city of Phoenix, brought suit in the superior court of Maricopa county against J. F. Engle, Edward Rosengren, W. O. Creamer and James Aaron, defendants, asking first that it be adjudged that defendant Engle, by and through his agents, employees or associates, was maintaining a public nuisance *per se* in the places described in the complaint, and that such nuisance is subject to summary abatement by plaintiffs under the ordinances of the city of Phoenix and the laws of the state of Arizona, and second, that each of the defendants and their agents be forever enjoined from keeping, occupying and maintaining horse race betting establishments of

the character described in the complaint at any place within the jurisdiction of the court. The prayer for relief was based upon the allegations that defendants were operating and maintaining establishments "where persons daily congregated for the purpose of making bets and wagers on horse races run in other states, such betting being made under the pari mutuel system of betting, said pari mutuel machines being located at the various tracks where the races are run in states other than the State of Arizona; that persons did daily congregate in said room for the purpose of making bets and wagers on horse races run in other states, which bets defendant J. F. Engle and his agents, employees or associates accepted and received, and after said races were run paid to the winners, if any, the amounts won by such persons," and that by so doing the defendants were maintaining a public nuisance *per se*, to-wit, a gaming house or place.

After the action was filed Hislop and Moore retired from their offices and Donald C. Scott and Lou Holtzendorff, their successors in office, were substituted as plaintiffs.

Defendants filed separate answers in which many defenses were raised. These answers are so voluminous that we do not quote them, but will consider the defenses set up thereby, in accordance with the legal propositions which they raise. Judgment was for plaintiffs, and defendants have appealed.

The first, and the most important, question is whether establishments of the nature of those which the complaint alleges, and the answers admit defendants operate, are public nuisances *per se*, or, indeed, nuisances at all, in view of the fact that it was neither specifically alleged nor admitted that the acts charged interfered with the comfortable enjoyment of life and property by an entire community or neighborhood or

by a considerable number of persons. It is the claim of plaintiffs that an establishment of the kind described in the complaint, and admitted by the answers to exist, is a public nuisance *per se,* and that it is not necessary for the public authorities, in attempting to abate or enjoin the operation of such a nuisance, either to allege or prove that it interferes with the public enjoyment of life and property by the public or any portion thereof. It is contended on the other hand by defendants that this must be proved, and, therefore, must be alleged before it can be held that a nuisance of any character exists. The determination of this question is of considerable importance to the state of Arizona, as it has appeared before us in a number of cases in one form or another, and from the record in those cases, as well as in this, it cannot be doubted that until it be definitely settled whether these establishments are public nuisances *per se,* it is bound to recur again and again.

Section 43–4603, Arizona Code, 1939, which is identical with section 4693, Revised Code, 1928, defines public nuisances, and reads as follows:

"*Public nuisance — Maintaining — Penalty.* — Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, or which unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a public nuisance, and is no less a nuisance because the extent of the annoyance or damage inflicted is unequal. Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who wilfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

The ordinance of the city of Phoenix, under which this proceeding is brought, is in substance and legal effect similar thereto.

In the case of *Engle* v. *State,* 53 Ariz. 458, 90 Pac. (2d) 988, 991, we had occasion to consider the meaning of the section. Therein we said:

"A public nuisance is defined by the section as being anything which is injurious to health, or indecent or offensive to the senses so as to interfere with the comfortable enjoyment of life or property by any considerable number of persons. . . .

"From time out of mind the term 'nuisance' has been regarded as incapable of precise definition, because the controlling facts are seldom alike, and each case stands upon its own footing. The term is so comprehensive that it has been applied to almost all wrongs which have interfered with the rights of citizens, whether in person, property or the enjoyment of his property or his comfort. [Citing cases.] The old definition given by Blackstone as 'anything that worketh hurt, inconvenience or damage' means substantially the same as our statute, although the latter uses a much greater number of words to reach the same result. [Citing case.] . . .

"The [Oregon] court, applying the principle of statutory construction above referred to, held that the section just quoted was intended by its language to cover offenses against the public peace, health and morals not elsewhere punishable by the Code, and which were known at common law as 'indictable nuisances.' We are satisfied that section 4693, *supra,* was inserted in our Code for the same purpose, and that any act which, under the common law, was construed as a public nuisance, is a violation of that section, and punishable thereunder unless the act is made punishable elsewhere in our law. The Oregon court, in the case of *State* v. *Nease,* 46 Or. 433, 80 Pac. 897, had under consideration an information charging a public nuisance on facts practically identical with those shown by the information and stipulation in the case at bar. The court said: ' . . . That such a house is a gaming or gambling house, and punishable as a nuisance at common

law, whether betting on a horse race is a crime or not, has so often and uniformly been held by the courts that it is no longer open to discussion. There is no dissent in the adjudged cases, and it is unnecessary to do more than cite the authorities: [Citing cases.] . . . ,

"We are satisfied that an establishment conducted as was that of defendants is a public nuisance under sec. 4693, *supra,* whether betting on a horse race be a crime or not, and we consider it unnecessary to discuss the question further."

 It is, therefore, conclusively established that under our law an establishment of the nature maintained by defendants in that case is a public nuisance. But, say defendants, the parties therein stipulated that the establishment in question interfered with the comfortable enjoyment of life by a considerable number of persons, and thus supplied an essential element of the offense, which does not appear in the present case. "There are two kinds of public nuisance. One is that class of aggravated wrongs or injuries which affect the morality of mankind and are in aerogation of public morals and decency and being *malum in se,* are nuisances irrespective of their location and results. The other is that class of acts, exercise of occupations or trades, and use of property which become nuisances by reason of their location or surroundings. . . . " Chap. 2, sec. 15, Joyce on Nuisances. The latter class is commonly referred to as nuisances *per accidens.* So far as the effect is concerned, once either class is established as such, there is little or no difference, but there is a great deal of difference in the proof required to establish it. When anything is a nuisance *per se,* all that is necessary to establish the right of the public authorities to demand the proper remedy is to prove the act which, as a matter of law, constitutes the nuisance. When, however, the act is not a nuisance *per se,* it is necessary not only to prove

the act, but also to prove the circumstances which make it a nuisance. *Pennsylvania Co., etc.,* v. *Sun Co.,* 290 Pa. 404, 138 Atl. 909, 55 A. L. R. 873; *Dennis* v. *Eckhardt,* 3 Grant Cas., Pa., 390. The difference is well illustrated in the case of *Ehrlick* v. *Commonwealth,* 125 Ky. 742, 102 S. W. 289, 290, 10 L. R. A. (N. S.) 995, 128 Am. St. Rep. 269, in the following language:

" . . . Keeping a common gaming house, which is held to include poolrooms where betting on horse races is indulged [citing cases] to which there is common resort for the purpose of betting, and at which money or other property is bet, won, or lost, is *per se* a nuisance at the common law [citing cases]. A nuisance *per se* is any act, or omission or use of property or thing, which is of itself hurtful to the health, tranquility, or morals, or outrages the decency, of the community. It is not permissible or excusable under any circumstances. [Citing cases.] . . .

"Under a charge of maintaining a public or common nuisance, where the thing is *per se* a nuisance, such as a poolroom or other gaming house is, it is no defense that there was no noise or disturbance, nor that the community were not disturbed by its presence. [Citing cases.]"

▮ Nor do we know of any case which holds that under the common law a gaming or gambling house is not a nuisance *per se.* We hold, therefore, that when a pleading alleges facts which show the operation and maintenance of a gaming house, as we have defined it, it alleges the maintenance of a nuisance *per se,* and that it is not necessary either to allege or prove, in an action by the public authorities, that the maintenance of the nuisance interfered with the comfortable enjoyment of life and property by the public or any considerable portion thereof, for these things are conclusively presumed from the commission of the act itself. *State* v. *Patterson,* 14 Tex. Civ. App. 465, 37 S. W. 478;

*Hill* v. *Pierson,* 45 Neb. 503, 63 N. W. 835; Joyce on Nuisances, sec. 395.

█ The next question is whether injunction was a proper remedy. That courts of equity have jurisdiction to enjoin a continuing nuisance cannot be denied. *State* v. *Patterson, supra.* It is contended, however, that there are two ample and adequate remedies to meet the situation, (a) summary abatement as set forth in *Hislop* v. *Rodgers,* 54 Ariz. 101, 92 Pac. (2d) 527, and (b) a criminal action for violation of the ordinance, and that when this is true an injunction should not issue.

█ It is true that these remedies may be used against a public nuisance. We think, however, that they do not always afford a complete remedy, and that it is generally discretionary with the trial court as to whether the writ should issue or not. Joyce on Nuisances, sec. 416. This court takes into consideration all of its own records. The past history of the case and the fact that criminal proceedings and summary abatements have already been tried, apparently without putting an end to the maintenance of the nuisance complained of, either in the particular places set forth in the complaint or in other places, shows that the trial court did not abuse its discretion by issuing the injunction.

█ The next question is whether the court erred in granting judgment on the pleadings. Defendants contend that there were issues of fact to be determined, and that under such circumstances a judgment on the pleadings is improper. Sec. 21–431, Ariz. Code, 1939; *Phoenix Hdwe. Co.* v. *Paragon Paint, etc., Corp.,* (D. C.), 1 F. R. D. 116. Upon examining the pleadings it appears that the only material issue of fact raised by defendants was whether the establishments in question "interfered with the comfortable enjoy-

ment of life or property by the entire community or neighborhood or by any considerable number of persons." Since we have held that in the case of a nuisance *per se* it is not necessary that this should either be alleged or proved, we cannot see where there was any factual question raised by the pleadings which it was necessary to determine. The court, therefore, properly rendered judgment on the pleadings.

The last question is in regard to the substitution of parties. We think the complaint on its face shows that it was in reality an action maintained by the city, through its proper officers, to enjoin the continuance of a nuisance. It is obvious in a case of this kind that if there is a change in the personnel of the officers the new officers must be substituted if the policy of the city in enforcing its law is to be continued. We are of the opinion that the request for substitution made by the new officers indicated sufficiently that they desired to continue the suit and authorized the court to make the substitution. Sec. 21–533, Ariz. Code, 1939. We cannot see the applicability of *Ex parte La Prade,* 289 U. S. 444, 53 Sup. Ct. 682, 77 L. Ed. 1311, to the situation in the present case. There an attempt was made to cause a substitution by the opposite party, and it was held it did not appear the officer desired to continue the proceeding sought to be enjoined. Here the officers stated their desire that they be substituted.

It is also urged that the right of defendants to damages in case the padlocking of their establishments be determined to be illegal will be defeated by allowing the substitution. We cannot see where this is true. Under the law, as we have declared it, the pleadings admit that the places padlocked were nuisances *per se.* If this be true, there is certainly no action for damages for abating them. *Hislop* v. *Rodgers, supra.*

We think it unnecessary to discuss the case further. The trial court properly rendered judgment in favor of plaintiffs on the record before it.

Judgment affirmed.

McALISTER, J., concurs.

ROSS, J., (Dissenting).—As a citizen of Arizona, my sympathies are with the portion of our population that is striving to rid the community of the professional gamblers and places where gambling is conducted, but in my capacity as a judge, if I would aid in their extirpation, I must do it in accordance with the laws as passed by the Legislature of the state. That department has plenary power over gambling in all of its phases. It can abolish or prohibit gambling houses or it can regulate such places. It has not said that a place such as described in the complaint is unlawful. It has prohibited certain kinds of gambling and gambling houses, sections 43-2701 to 43-2715, Arizona Code, 1939, but in *Engle* v. *State,* 53 Ariz. 458, 90 Pac. (2d)988, 991, it was decided by this court that such prohibition does not include an establishment such as the one this defendant is charged with keeping. In that case it was held that Engle's establishment, as described in the information and as shown by the stipulation of the facts, constituted a public nuisance as defined by section 4693, Revised Code of 1928. This section was construed therein to mean:

"A public nuisance is defined by the section as being anything which is injurious to health, or indecent or offensive to the senses so as to interfere with the comfortable enjoyment of life or property by any considerable number of persons. . . . "

The present complaint does not allege the elements of a public nuisance as described in section 4693 or as stated by this court. In other words, it fails to allege

either in such language or equivalent language that Engle's establishment "is injurious to health, or indecent or offensive to the senses so as to interfere with the comfortable enjoyment of life or property by any considerable number of persons." It merely recites that defendant's establishment is a place where bets and wagers are made on horse races run in other states, under the pari-mutuel system of betting; that persons congregate there to bet and to be paid their winnings, if any, and that such establishment is "a public nuisance *per se,* to-wit: a gaming house or a gaming place." Clearly, such a place does not fall within the terms of the statute defining a public nuisance, nor within the definition of a public nuisance as heretofore given by this court.

It is not enough that the facts alleged and admitted constitute a public nuisance at common law. We have no common-law offenses and, since our Legislature has defined what a public nuisance is, common-law definitions may not be substituted. Section 43–101, Arizona Code 1939, which has been the law of this jurisdiction for many years, reads:

" . . . No act or omission commenced after twelve o'clock, noon, of the day on which this Code takes effect, is criminal or punishable, except as prescribed or authorized by this Code, or by some other law of this state, or by some ordinance, municipal, county or township regulation, passed or adopted under authority of law."

I think this court went the limit in *Engle* v. *State, supra,* to assist in the suppression of gambling and should hesitate long before supplying for the exigencies of this case what the Legislature has omitted to supply.

However, if defendant's establishment is a public nuisance as defined by the statute, then his act constitutes a misdemeanor and he should be tried therefor

like all other persons who commit crimes. The rule in this and all other jurisdictions is that injunction will not lie to prevent a person from committing a crime unless it be shown in the petition for the writ that it is necessary that the party be enjoined to prevent some property or property right from being injured or destroyed or to protect the public health. *State* v. *Smith,* 43 Ariz. 131, 29 Pac. (2d) 718, 92 A. L. R. 168, modified 43 Ariz. 343, 31 Pac. (2d) 102, 92 A. L. R. 173; *Takiguchi* v. *State,* 47 Ariz. 302, 55 Pac. (2d) 802.

It is fundamental that injunction will not issue if the party has a plain, speedy and adequate remedy at law. The remedy here is a criminal prosecution. If jurors fail to convict, even though the evidence should be clear as to defendant's guilt, it is not the fault of the law but of those who administer it. That, however, should not prevent its taking the regular course.