198 P.2d 1018

STATE ex rel. SULLIVAN, Attorney General, v. PHŒNIX SAV. BANK & TRUST CO. et al.

No. 5030.

Supreme Court of Arizona.

Nov. 8, 1948.

John L. Sullivan, Atty. Gen., Evo De Concini, Atty. Gen., John W. Rood, Perry M. Ling, Chas. D. McCarty and Edward Jacobson, Asst. Attys. Gen., for appellant.

Stahl & Murphy, of Phoenix, for appellee Phoenix Sav. Bank & Trust Co.

Whitney, Ironside & Whitney and Leslie C. Hardy, all of Phoenix, for appellee Frank Pelosi.

LaPRADE, Justice.

This is an appeal from a judgment dismissing plaintiff's complaint after trial upon the merits. The action was brought by the State of Arizona upon the relation of the Attorney General against The Phoenix Savings Bank and Trust Co., a corporation, Frank Pelosi, and others. The action was designed to enjoin the use of certain premises situated at 21 Wall Street in the City of Phoenix for the purpose of conducting wagering or betting on the results of horse races, characterized in the complaint as "bookie" operations and designated as a public and common nuisance as defined by section 43-4603, A.C.A.1939. The evidence discloses and the court found that for more than a month prior to the filing of the complaint defendant Pelosi permitted a large number of persons to congregate daily within the building located upon the premises for the purpose of wagering and betting on the results of horse races conducted at tracks without the State of Arizona. Additional findings of fact were (1) that " * * * during said times defendant Pelosi there accepted from said persons wagers or bets upon the results of said horse races and there paid to said persons such amounts as were won by them as the result of such wagers or bets. That admittance to said building was effected through a door on the east side thereof which was attended by an employee of defendant Pelosi. The results of said horse races were received by defendant Pelosi within said building by telephone and such results were then and there announced by him. Defendant Pelosi maintained within said building for the convenience of his patrons chairs, tables, lights, and wallboards upon which were posted form sheets and scratch sheets which disclosed the entries by names of all horses running in said races, the names and weights of jockeys who would ride such horses, track conditions, past performances of horses, approximate betting odds, the result of said horse races, pari-mutuel prices paid upon each horse placing, first, second and third, and other information customarily supplied for the purpose of making wagers or bets upon the results of horse races."

(2) that on the same date the complaint seeking the injunction was filed there was filed in the justice court of West Phoenix Precinct a criminal complaint charging Pelosi with wagering and betting on horse

races as a bookmaker in violation of section 73-1607a, chapter 85, Session Laws 1945, (3) that thereafter on January 22nd an information was filed against defendant Pelosi and others charging them with wagering on the results of horse races as a bookmaker in violation of said section 73-1607a, (4) that no evidence was offered or received to prove that Pelosi had theretofore been charged with conducting the activities complained of other than the criminal proceedings just mentioned which were instituted on the same date. Defendant Pelosi affirmatively alleged that plaintiff had a plain, adequate, and speedy remedy at law and in support of that remedy invoked section 43-4603, supra, and chapter 85, Session Laws 1945 (section 73-1607a, supra). These sections read as follows:

"43-4603. Public nuisance—Maintaining—Penalty.—Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, or which unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a public nuisance, and is no less a nuisance because the extent of the annoyance or damage inflicted is unequal. Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who wilfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

"73-1607a. Penalty.—All forms of wagering or betting on the result of a horse-race or dog-race, except as provided by law, whether conducted in this state or elsewhere, shall be illegal. Any person directly or indirectly involved in such wagering or betting whether in placing or making a bet or wager for himself or as a book-maker shall be guilty of a misdemeanor."

Upon the findings of fact the trial court concluded as a matter of law that the establishment as conducted was a nuisance *per se,* but plaintiff was *not* entitled to injunctive relief because plaintiff had an adequate remedy at law; that defendants were entitled to judgment dismissing the complaint and the action, and it was so ordered. The ruling of the court dismissing the complaint and refusing to enter judgment permanently enjoining the actions complained of is assigned as an abuse of discretion since the court as a matter of law had concluded that the establishment conducted by appellees was a nuisance per se.

By Engle v. Scott, 57 Ariz. 383, 114 P.2d 236, 238, it is conclusively established that under our law a "bookie" establishment of the nature maintained by

defendant Pelosi is a common gaming house and as such is per se a nuisance against which injunction lies; and, in reference to the remedy, the court said: "* * * When anything is a nuisance per se, all that is necessary to establish the right of the public authorities to demand the proper remedy is to prove the act which, as a matter of law, constitutes the nuisance. * * *"

This statement of the law conforms to the holding in many jurisdictions that when a proper case for injunction exists, such as the existence of a nuisance per se, the injunction must issue as a matter of right and to refuse to issue it amounts to a mistake of law.

In Walters v. McElroy, 1892, 151 Pa. 549, 25 A. 125, the court reversed the decree of the lower court refusing the injunction and directed that an injunction should issue to restrain defendant from depositing debris on plaintiff's land even though plaintiff had a legal remedy that he had not attempted to use. (No invasion of a property right need be shown in order to justify the use of an injunction to abate a public nuisance at the instance of the state. Engle v. Scott, supra. The rule as to property rights applies only when the complainant is a private individual attempting to abate a public nuisance. State ex rel. La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 92 A.L.R. 168.)

In Spence v. Fenchler, 1915, 107 Tex. 443, 180 S.W. 597, plaintiffs sued seeking a temporary and permanent injunction to restrain maintenance of a disorderly house in El Paso and for the sale therein of liquor without a license. A statute existed making the keeper of a bawdy house subject to a $200 fine and twenty days in jail for each day of keeping the house. A special injunction statute also existed though this was but declaratory of the common law there and here. State ex rel. La Prade v. Smith, supra. The refusal of the injunction by the lower court was appealed, and the supreme court, in issuing the injunction when the legal remedy had not been attempted, said [107 Tex. 443, 180 S.W. 602]:

"'Where the case made out by the complainant is perfectly clear, and he has complied with all the requirements of law for the issuance of an injunction, he is entitled to the injunction as a matter of right.' Cyc. vol. 22, p. 748; Beebe v. Guinault, 29 La.Ann. 795.

\* \* \* \* \* \*

"* * * we are of the opinion that, * * * in the light of the record before us in this case, plaintiffs are entitled to a * * * writ of injunction enjoining said alleged 'bawdyhouse,' including said house at No. 214 Broadway."

In Denapolis v. United States, 3 F.2d 722, 723, the Fifth Circuit Court of Appeals, in considering whether a liquor es-

tablishment could be enjoined without first attempting a legal remedy, said: "The statute having declared the premises where intoxicating liquor is kept to be a common nuisance, the Government has the right to abate that nuisance by a suit in equity, notwithstanding it at the same time has the further right to resort to criminal prosecutions. It may resort to either method, or both, at its discretion. In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092."

In Engle v. Scott, supra, one of the defenses was that an injunction should not issue for the reason that a criminal action for violation of the ordinance was an adequate remedy; the other, that summary abatement was available. With reference to this contention, the court said: "It is true that these remedies may be used against a public nuisance. We think, however, that they do not always afford a complete remedy, and that it is generally discretionary with the trial court as to whether the writ should issue or not. Joyce on Nuisances, sec. 416. This court takes into consideration all of its own records. The past history of the case and the fact that criminal proceedings and summary abatements have already been tried, apparently without putting an end to the maintenance of the nuisance complained of, either in the particular places set forth in the complaint or in other places, shows that the trial court did not abuse its discretion by issuing the injunction."

Prior to the holding in the Engle v. Scott case this court had unequivocably established the law in this jurisdiction to be that an injunction will issue to restrain a public nuisance even though the acts complained of are punishable also under penal provisions of the statutes. Arizona Copper Co. v. Gillespie, 12 Ariz. 190, 100 P. 465, affirmed in 230 U.S. 46, 33 S.Ct. 1004, 57 L.Ed. 1384; Bisbee v. Arizona Insurance Agency, 14 Ariz. 313, 127 P. 722; State ex rel. La Prade v. Smith, supra; Funk Jewelry Co. v. State ex rel. La Prade, 46 Ariz. 348, 50 P.2d 945.

It appears to us that in this case the injunction is not sought to prevent the commission of a crime, rather the act to be restrained is the maintenance or use of an establishment in such a manner as to constitute a public nuisance. This distinction is clearly recognized in texts on nuisances and remedies to abate them. We quote:

" * * * There is a manifest distinction between enjoining an individual from committing a crime and enjoining him from using his property so as to make it a nuisance to others, and between a proceeding to abate a nuisance and one to punish the offender for the crime of maintaining it. * * * " 39 Am.Jur., Nuisances, section 147.

" * * * There is a clear distinction between a proceeding to abate a nuisance, which looks only to the property that in the use made of it constitutes the nuisance,

48

and a proceeding to punish the offender for the crime of maintaining a nuisance. The two proceedings are entirely different, as are the results sought to be obtained. The remedy in equity is purely preventive, and the judgment deals merely with the use of the property in question. The defendant is not convicted of any offense, and he is not punished for what he has done, but that is left to the criminal courts." 39 Am.Jur., Nuisances, section 149.

Reference to the cases cited in support of the foregoing text statements clearly demonstrates that proceedings at law or by indictment can reach only past or present wrongs, and will not adequately protect the public interest in the future. Typical of these cases is Stead v. Fortner, 255 Ill. 468, 99 N.E. 680, 682, which contains an excellent review of the existing authority on this subject. The following statement from this case is explanatory of the rule: "* * * A court exercising equitable jurisdiction will not restrain, by injunction, the commission of illegal or immoral acts and will not enjoin one engaged in the sale of liquor from making sales which are punishable by the criminal law. But that is not the object of this suit. The law has a double purpose—to punish the person committing an illegal act and to prohibit the use of property for illegal purposes— and these are separate and distinct. *Punishment for the act is a fine or imprisonment, or both, but it is not the sale or keeping for sale of liquor that constitutes the*

*nuisance, but it is the keeping of a place which the General Assembly has determined to be dangerous to the health, morals, safety, and welfare of the public.*" (Emphasis supplied.)

The only question that merits consideration on this appeal is whether the court abused its discretion under the circumstances in failing to issue the injunction as prayed for. Appellees lay great stress on the statement in Engle v. Scott, supra, that "it is generally discretionary with the trial court as to whether the writ should issue or not", and insist that the case is really bottomed upon the statement of the court that the record disclosed that criminal proceedings and summary abatements had been tried and found to be unavailing, and that the court did not rely upon its pronouncement that "* * * When anything is a nuisance per se, all that is necessary to establish the right of the public authorities to demand the proper remedy is to prove the act which, as a matter of law, constitutes the nuisance. * * *"

If the contended-for interpretation be correct, the law as established together with the conduct of defendant Pelosi would have met this requirement. The effrontery of defendant Pelosi in establishing and maintaining a race-horse-gambling "bookie" establishment is shocking in view of the fact that this court in Engle v. State, 1939, 53 Ariz. 458, 90 P.2d 988, declared that such an establishment was a public

nuisance and the keeper was guilty of a criminal offense; and in Engle v. Scott, 1941, supra, affirmed a judgment issuing a restraining order against an activity identical with that complained of in this case. He was not deterred by the law as established by decisions of this court, nor was he inhibited by enactment of chapter 85, Session Laws 1945, supra, section 73-1607a, specifically making it an offense to bet or wager on horse races. One's credulity is not overtaxed in believing that Pelosi felt no element of risk in his defiance of law and public opinion. He openly, continuously, and notoriously, for more than a month, operated his establishment within hailing distance of the city hall and the county courthouse. Indicative of the lassitude existing on the part of local officials is the fact that since October 3, 1944, there have been pending in this court five appeals from judgments dismissing complaints for injunction against Joe Loges, Wm. Cramer, Pete Anderson, Robert Brown, and Frank Peloci (idem sonans), seeking to enjoin and restrain them from maintaining horse-race-betting establishments in the City of Phoenix. Loges was alleged to have been operating at 140 West Adams St., Anderson at 230 East Washington St., Brown at 26 East Monroe St., Cramer at 613 North Central Ave., and Peloci at 21 Wall St., being the identical location set forth in the case under consideration. These suits were brought by the then city manager and the chief of police of the City of Phoenix. The commission of the acts charged in the complaints was not denied; nevertheless, the trial court was persuaded to deny plaintiffs the relief sought upon the ground that they had a plain, speedy, and adequate remedy at law by criminal prosecution under section 43-4603 and also under section 98 of Ordinance 99 of the City of Phoenix relating to abatement. There has been no effort on the part of city officials, past or present, to prosecute these appeals to effect and they are withering on the vine. Had it not been for the action on the part of the attorney general in instituting this suit and the attending criminal prosecutions, as more fully appears from the case of State of Arizona, appellee, v. Frank Pelosi, Joe Dean Davis, and Irvin Kaslow, appellants, decided this day, it is reasonable to believe that defendant Pelosi would still be operating his usual place of business with profit to himself and as a valuable tenant of defendant Phoenix Savings Bank and Trust Co. Bookmaking operations have gone on more or less continuously in Phoenix for many years as indicated by the long list of wagering cases included in the records of this court. We take judicial knowledge of the fact that as late as February of this year bookmaking operations were flourishing, and the Arizona Republic of September 6, 1948, carried headlines of new raids on such establishments in Phoenix. As the author of the news article said concerning the recent series of raids

aimed this time at tearing out the wire services in a desperate attempt to find some way to stop such activities, "* * * (the bookmaking racket) has been a constant headache to law enforcement officers for many years." This long history of "bookie" litigation in Arizona and the sporadic revival of horse-race-betting establishments give ample reason for the use of equity's power which is designed and intended to operate in the future. As the United States Supreme Court said in Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 12 S.Ct. 689, 693, 36 L.Ed. 537: "* * * Proceedings at law or by indictment can only reach past or present wrongs * * * and will not adequately protect the public interests in the future."

See also Joyce, Law of Nuisances, section 437, page 630; Repass etc. v. Commonwealth ex rel. Attorney General, 131 Ky. 807, 115 S.W. 1131, 21 L.R.A.,N.S., 836.

We conclude that once the court has found that a public nuisance, a nuisance per se, exists, and further finds that it has the power to enjoin in such a case, then to deny the injunctive remedy constitutes a clear abuse of judicial discretion. To follow a program of denial makes the courts unwitting but highly prized partners in crime against the laws of the state. Such action represents on the one hand an acknowledgment of the power to suppress the bookmaking racket, but on the other a total blindness to the obvious realities— the size and power of the adversary and the manifest need for the available weapon pleaded for by the state. To deny injunctive relief to restrain a public nuisance which is a nuisance per se and malum in se upon the ground of legal discretion is equivalent to saying that the court has discretion to prevent the effective enforcement of the law. We hold that legal discretion to deny an injunction against a nuisance per se, such as a common gambling house, does not exist. A common gambling house is malum in se and should be summarily abated, and the remedy of injunction is not to be denied the state because it has not seen fit to follow the circuitous route of criminal prosecution with the attendant delays incident to arrest, arraignment, bail, summoning of a jury panel, trial, mistrial, new trial, and appeal.

The judgment of the lower court is reversed with directions to enter judgment as prayed for against each of the answering defendants.

STANFORD, C. J., and UDALL, J., concurring.