461 P.2d 103

**The STATE of Arizona, Appellee,**

**v.**

**Betty Jo HUBKA, Appellant.**

**No. 2 CA–CR 174.**

Court of Appeals of Arizona.
Division 2.

Nov. 14, 1969.

Review Denied Jan. 20, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Phoenix, for appellee.

Lewis Roca Beauchamp & Linton, by John P. Frank, Michael J. LaVelle, Phoenix, John Wm. Johnson, Tucson, for appellant.

HATHAWAY, Judge.

The appellant was convicted of attempting to murder her husband. She had mailed a first-class letter requesting the addressee to kill her husband for a fee or to place her in contact with someone who would perform the murder. The letter was addressed in the following manner:

(Name of addressee deleted)

c/o Rural Fire Protection

North Oracle Road and Ina Road

Tucson, Arizona 85705

The word "Personal" was printed on each side of the envelope.

The addressee was not present when the letter was delivered to the fire station. Following the station's customary practice, the letter was placed in a desk drawer to be picked up by the addressee upon his arrival. An inquisitive member of the department held the letter up to a light and, through the envelope, read "will pay $1,000 to have party in Phoenix—off permanently by December." A police officer friend was notified and upon his arrival at the fire station, he proceeded without a search warrant to open and read the letter.

The police responded to the letter under a fictitious name. In turn, Mrs. Hubka communicated with the masquerade killer through newspaper classified ads and through the mail, and she furnished the name, address, and a photograph of her intended victim and a description of his automobile. The police received a $500 retainer through the mail as one-half payment in advance under the murder contract. Subsequent attempts to meet with the defendant failed. The appellant's last letter demanded "delivery" or return of the $500. This was followed by a letter informing the postal authorities that she had

been defrauded of $500 through the mails upon a promise to furnish information which would prove helpful in her divorce.

The appellant asks that her conviction be reversed, contending initially that the search and seizure by the police of her first letter constituted a violation of the Fourth Amendment of the United States Constitution.

■ First-class mail cannot, before delivery, be seized nor opened without the authority of a search warrant. United States v. Oliver, (8th Cir. 1957) 239 F.2d 818, 61 A.L.R.2d 1273, appeal dismissed, 353 U.S. 952, 77 S.Ct. 865, 1 L.Ed.2d 858 (1957); Lustiger v. United States, (9th Cir. 1967) 386 F.2d 132, cert. denied, 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142, (1968); United States v. Beckley, (6th Cir. 1964) 335 F.2d 86, and Oliver v. United States, (10th Cir. 1957) 243 F.2d 391. Neither party has referred us to a decision where an addressor has claimed the opening of a letter after it has been delivered but before its actual physical receipt by the addressee was a violation of the addressor's Fourth Amendment rights. Nor has our own research uncovered such a situation. The initial question we must resolve is whether the appellant-addressor has the necessary standing to raise this issue. The general rule is that only those whose rights have been infringed by a search may complain. 79 C.J.S. Searches and Seizures § 52.

In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) the Supreme Court of the United States held that one making a telephone call from a public telephone booth " * * * is surely entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world." 88 S.Ct. at 512. In holding that that telephone conversation was protected by the Fourth Amendment, the Supreme Court stated:

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [citations omit-

ted]. *But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."* 88 S.Ct. at 511 (Emphasis added)

First-class mail, as Mrs. Hubka's letter was, is clearly a communication intended to be private. "Letters and sealed packages of this kind in the mail are as fully guarded from examination and inspection, * * *, as if they were retained by the parties forwarding them in their domiciles." Ex parte Jackson, (1877) 96 U.S. 727, 733, 24 L.Ed. 877. In that case the Supreme Court further stated: "The constitutional guaranty of the right of the people to be secure in their papers against unreasonable search and seizure extends to their papers, thus closed against inspection, wherever they may be." 96 U.S. p. 733.

■ United States v. Oliver, supra, held that it is a violation of one's Fourth Amendment rights for the Post Office to open and inspect a first-class package without first obtaining a search warrant. The court stated that there existed a " * * * holding out, to all who might make use of the mails, that no first-class mail would, in its depositing, transmission, *or delivery*, be subject to any opening and inspection by the Post Office Department, without a warrant; * * *." 239 F.2d at 823 (emphasis added). The protection against unreasonable searches and seizures by the Post Office Department encompasses a period up to and including *delivery*.

In cases involving mail theft, several courts, in construing the term "delivery" in 18 U.S.C.A. § 1702, have held that delivery means the actual physical receipt by the addressee, and not just the mere placing of a letter in the addressee's mailbox. Maxwell v. United States, (8th Cir. 1956) 235 F.2d 930, (where mail was customarily collected from tenants' mailbox by the earliest tenant and placed on a table in the lobby, the court held that delivery was not accomplished until the letter was received by the addressee.) And see, Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918); United States v.

Bullington, (C.C.Ala.1908) 170 F. 121; United States v. McCready, (C.C.Tenn. 1882) 11 F. 225; United States v. Meyers, (D.C.Wis.1906) 142 F. 907.

The protection of the mail has often been said to be a matter of national concern. In *Maxwell,* the court stated that: " * * * the plain language of the statute discloses a clear intent on the part of Congress to extend federal protection over mail matter from the time it enters the mails until it reaches the addressee or his authorized agent. We can think of no sound reason for not giving to the statute the full meaning which its language imports or for denying to Congress the power to protect a letter from theft *from the time it is mailed until it has actually been received by the person to whom it is addressed."* 235 F.2d 932 (Emphasis added).

Heavy public reliance on the mail requires its security until actual receipt by the addressee. One mailing a first class letter should expect and be assured that the letter will be safe from unreasonable searches and seizures.

While the contents of the letter, visible through the envelope might very well constitute probable cause for the subsequent search and seizure, State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962), one inherent fault remains—this determination is to be accomplished by a judicial officer. In this regard the *Katz* case contains the following particularly pertinent language:

"Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' * * * for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer * * * be interposed between the citizen and the police * * *. 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject

only to a few specifically established and well-delineated exceptions." 88 S.Ct. at 514 (citations omitted; emphasis in original).

This case does not come within any of the exceptions noted in the *Katz* case. Speed was not such an essential requirement that this search would come within the exigent circumstances exception. The letter was opened and read on the morning of November 29, 1967. It was not until the next day that the Sheriff's Department received the letter. The portion of the letter read through the envelope showed at most a solicitation or offer to the addressee to murder someone. The addressee was unaware apparently of even the existence of the letter at the time it was opened. No life was in immediate danger and sufficient time existed to secure a search warrant from the proper authorities.

The omission of a search warrant "bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964).

■ Subsequent communications by the police with Mrs. Hubka came about as a direct result of this illegal search. This evidence has often been called the "fruit of the poisonous tree," and such evidence is inadmissible. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); People v. Mickelson, 59 Cal.2d 448, 30 Cal.Rptr. 18, 380 P.2d 658 (1963); People v. Schaumloffel, 53 Cal.2d 96, 346 P.2d 393 (1959); People v. Mills, 148 Cal. App.2d 392, 306 P.2d 1005 (1957); People v. Schmoll, 383 Ill. 280, 48 N.E.2d 933 (1943). See generally, Titler, The Fruit of the Poisonous Tree Revisited and Shepardized, 56 Cal.L.Rev. 579 (1968). We find it unnecessary to consider the other points raised since the illegal search and seizure requires that the judgment be reversed.

KRUCKER, C. J., and HOWARD, J., concur.