480 P.2d 375

**CACTUS CORPORATION, dba the Apache Drive-In Theatre, Appellant and Cross-Appellee,**

v.

**STATE of Arizona, ex rel. Lewis C. MURPHY, City Attorney, City of Tucson, Appellee and Cross-Appellant.**

**No. 2 CA–CIV 835.**

Court of Appeals of Arizona, Division 2.

Feb. 9, 1971.

Rehearing Denied March 15, 1971.

Review Denied April 20, 1971.

Brown & Finn, by Michael J. Brown, Tucson, for appellant and cross-appellee.

Lewis C. Murphy, Tucson City Atty. by William E. Hildebrandt, Asst. City Atty., Tucson, for appellee and cross-appellant.

**PER CURIAM.**

This appeal is from a judgment in the trial court which permanently enjoined the appellant and cross-appellee (hereinafter referred to as the defendant) from displaying, showing or running a motion picture film entitled "Lysistrata", or any other motion picture film of the same character, on the screen of a drive-in movie operation, so as to be visible from a nearby public highway, and/or right-of-way, and/or the nearby neighborhood, on the basis that such activity is or would be a public nuisance as defined by A.R.S. § 13–601 (1956).[1] The film "Lysistrata" contains scenes of nudity, apparent heterosexual intercourse, female homosexual acts, and female autoeroticism. The appellee and cross-appellant (hereinafter referred to as the plaintiff) is the Tucson City Attorney. The cross-appeal is from the trial court's conclusion of law that A.R.S. § 13–535 (Supp.1970), a statute providing for an injunction against the sale or distribution of certain obscene items, does not apply to motion picture films.

The facts in the case before us are that between and including the evenings of September 2 and 13, 1969, the defendant exhibited the motion picture film "Lysistrata" at its place of business at 1600 East Benson Highway, known as the Apache Drive-In Theatre, in Tucson, Pima County, Arizona. The plaintiff filed the complaint herein on September 5, 1969, after a Tucson police lieutenant had viewed the movie. This complaint sought an injunction against the defendant on the basis that the exhibition of this film was in violation of Arizona's obscenity statute, A.R.S. § 13–532 (Supp.1970), and should be enjoined under A.R.S. § 13–535 (Supp.1970), as well as that the activity herein was a public nuisance, as defined by A.R.S. § 13–601 (1956). The trial court dismissed the portion of the complaint as to the obscenity of

[1]. A.R.S. § 13–601 (1956), defines in part a public nuisance as "Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by a considerable number of persons * * *."

the film, upon the defendant's motion, on the ground that A.R.S. § 13–535 (Supp. 1970), does not apply to motion picture films.

The film here was advertised as "X" rated and that persons under 18 years of age would be excluded from viewing it. The defendant had exhibited movies with similar quantities and/or types of nudity and/or sexual activity at this drive-in theatre during the three years prior to this action. The defendant's movie screen is clearly visible from nearby public highways, streets, rights-of-way, residences, and business establishments. In addition, there was proof that children under 18 years lived in certain of the nearby residences and frequented certain of the business establishments under adult supervision. Children under 18 also went to the area of the drive-in theatre while "Lysistrata" was being exhibited and apparently watched the film from outside the theatre.

There are five questions presented to us in this appeal and cross-appeal. The defendant has raised four questions in its appeal: (1) Was the defendant denied due process of law by the procedure in the trial court wherein he did not obtain a jury trial? (2) Was the trial court's ruling that the film here caused immediate and irreparable damage supported by the evidence? (3) Were the trial court's rulings that the showing of this film and others like it was a public nuisance, and that the nuisance be abated, supported by the evidence? (4) Was the judgment below in violation of the First and Fourteenth Amendments of the United States Constitution and the Second and Sixth Articles of the Arizona Constitution?

The plaintiff has raised one question in his cross-appeal: Whether or not the injunction provisions of A.R.S. § 13–535 (Supp.1970), apply to motion picture films?

■ As to the defendant's first contention of error, in regard to the denial of a jury trial, we discover that the only reference in the record here to a jury trial is in the defendant's Motion to Quash and Dismiss, in the portion thereof, relating to the alleged unconstitutionality of A.R.S. § 13–535 (Supp.1970). At no other place in this record, particularly neither in the transcript of the proceedings below nor in defendant's Motion for a New Trial, does mention of a jury trial appear. More simply put, since the defendant's motion to dismiss as to the obscenity portion of this action, involving A.R.S. § 13–535 (Supp. 1970), was granted, defendant was successful below, has not been prejudiced and has no appeal. Further, no written demand for a jury trial was made pursuant to 16 A.R. S. Rules of Civil Procedure, Rule 38(b) (Supp.1970), which constitutes waiver of such a right, even in the case of an oral request. Smith v. Rabb, 95 Ariz. 49, 386 P.2d 649 (1963); 16 A.R.S. Rules of Civil Procedure, Rule 38(d) (1956). The trial court did not err in respect to not holding a jury trial.

■ The defendant's second contention is that the trial court erred in ruling that the factual situation here showed immediate and irreparable damage, because this ruling is not supported by the evidence. We find that there is reasonable evidence in this record that such damage had occurred, and would continue to occur, from the situation here, and must affirm in this respect on that basis. There was proof below that the film here, and films of this type, are harmful to children who were able to view it.

Dr. McCabe, a child psychiatrist who had viewed the movie testified:

"I would consider this material as I saw it to be potentially harmful to any minor child, in that children are particularly sensitive to assuming that what they see portrayed or demonstrated by adults is somehow or other right or normal in the adult world. A minor child has no choice but to assume that a movie projected on a large screen is a work of adults. As such he must then, he then also is in a position to assume that this is what the adult norm stands for. The motion, I would say roughly, doubles the

significance of the impact over still photography of the same sort, leaving very, very little to the imagination. Reading pornography requires at least the individual understand what he is reading.

\* \* \* \* \* \*

Reading requires the individual to use his intelligence and imagination. He must at least understand what he reads and he must be able to imagine what the printed word means. When an individual sees something acted out in absolute realism, with no distraction, that leaves nothing to the imagination and has a much greater impact, and this is truer the younger the child."

Further, there was proof that this film and films of this type were offensive to nearby residents. There was also proof that the screen of this drive-in theatre and the images thereon, could be clearly observed from the nearby highway, with a distracting effect.

■ The legal basis for a decision that the activity here is harmful and subject to abatement is both broad and sound. The United States Supreme Court has recognized the right of a State to protect its children from material harmful to them, but not necessarily "obscene." Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The Arizona obscenity statutes dealing with minors appear to have been taken verbatim from the New York statutes approved in *Ginsberg*. Secondly, the abatement of a public nuisance, as defined by A.R.S. § 13-601 (1956), has long been recognized as the right of public agencies, as well as private citizens, by injunction. Engle v. Scott, 57 Ariz. 383, 114 P.2d 236 (1941).

In the case at bar, there is no necessity for a finding of damage in that the activity in question is a public nuisance *per se*, which produces such annoyance, inconvenience and discomfort that the law presumes damage. City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30 (1938); Engle v. Scott, supra. Such nuisances are *malum in se*. Even if it is assumed *arguendo* that

the activity here is a nuisance *per accidens*, the burden of showing damage has been met by the plaintiff. In any event, the defendant's second contention, as to the sufficiency of the evidence is without merit.

The defendant's third contention is that the trial court's rulings that the activity here was a public nuisance and that it should be abated by injunction were erroneous. We do not agree. A mere reading of the statute defining public nuisances, A.R.S. § 13-601 (1956), in light of the facts before us, clearly indicates the correctness of the trial court's characterization of the activity *sub judice* as that of a public nuisance. The Arizona Supreme Court has held that a "bookie joint", State ex rel. Sullivan v. Phoenix Sav. Bank & Trust Co., 68 Ariz. 42, 198 P.2d 1018 (1948), as well as a common gambling house, Engle v. Scott, supra, are public nuisances. By statute a house of ill-fame is a public nuisance. A.R.S. § 13-590 (1956). The trial court was correct in its rulings as to the character of the activity at bar.

■ As to the abatement of the activity in question upon a finding that it was a public nuisance, the trial court was correct. Actually, under Arizona law, upon a determination that an activity is a public nuisance *per se*, the trial court has no discretion but to abate the activity by injunction. State ex rel. Sullivan v. Phoenix Sav. Bank & Trust Co., supra. Assuming, again *arguendo*, that the activity here was a public nuisance *per accidens*, as pointed out above, the proof was sufficient to enjoin it.

■ The defendant's last contention, that the trial court's ruling was a denial of due process of law and encroachment on freedom of speech and press, under the State and Federal constitutions, is, simply stated, without merit in view of both the *Ginsberg* case, supra, and the case law in Arizona providing for abatement of nuisance. It should be noted that freedom of speech and press are not unqualified rights in that obscenity is not protected. Roth v.

**42**

United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Further, as stated above, a state may regulate the well-being of the children and protect them from potential harm. Ginsberg v. New York, supra.[2] Engle v. Scott, supra, clearly holds that Arizona courts have the jurisdiction under their equity powers to enjoin activities of the type at bar. The whole question at bar is the balancing of the rights of the defendant to operate its business against the rights of the nearby public. See, MacDonald v. Perry, 32 Ariz. 39, 255 P. 494 (1927).

■ ■ A drive-in theatre is capable of imposing its pictures upon persons without their consent. If the owner of land can be prohibited from polluting the community with noxious smoke and unpleasant odors, we conceive of no reason why he cannot be prohibited from polluting the neighborhood with visual material harmful to children. We see no reason why a public nuisance which is a menace to the well-being of the children in a community should be protected by the First Amendment. Indeed, speech or conduct which inflicts harm is not protected by the First Amendment. C.f. People v. Stover, 12 N.Y.2d 462, 240 N.Y.S.2d 734, 191 N.E.2d 272 (1963), appeal dismissed per curiam, 375 U.S. 42, 84 S.Ct. 147, 11 L.Ed.2d 107 (1963). We hold that the trial court's injunction against the operation of the defendant's business in such a manner as to be visible by the nearby public was a correct adjustment of the respective rights involved.

As to the question raised by the plaintiff in his cross-appeal, we find it unnecessary to consider it in view of our disposition of this case. State v. Hubka, 10 Ariz.App. 595, 461 P.2d 103 (1969).

Affirmed.

HATHAWAY and HOWARD, JJ., and JOHN A. McGUIRE, Judge of the Superior Court, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.

2. The public policy of this State with regard to children and movies has been expressed by the legislature in 1970 in A.R.S. § 13–536, subsec. B. Although we are not relying on this statute since it was enacted subsequent to this suit, it should be noted. It states:

"It is unlawful for any person knowingly to exhibit for a monetary consideration to a minor or knowingly to sell to a minor an admission ticket or pass or knowingly to admit a minor for a monetary consideration to premises whereon there is exhibited a motion picture, show or other presentation which, in whole or in part, depicts nudity, sexual conduct or sadomasochistic abuse and which is harmful to minors."

We further note the apparent inconsistency in the defendant's conduct and its claim on appeal. Defendant, under the "self-policing" standards of the motion picture industry did not permit minors under the age of 18 years into this type of movie, yet, it now claims the right to subject minors not inside the premises to these same movies.